Shirley A. CUNNINGHAM, Plaintiff,

v.

FORD MOTOR COMPANY, Defendant.

Civ. A. No. 75–1780.

United States District Court,
D. South Carolina,
Charleston Division.

April 6, 1976.

**1102**

A. Hoyt Rowell, III, of Gibbs, Gaillard, Rowell & Tanenbaum, Charleston, S. C., for plaintiff.

William H. Grimball, of Grimball & Cabaniss, Charleston, S. C., for defendant.

HEMPHILL, District Judge.

On March 5, 1976, defendant Ford Motor Company (hereinafter Ford) filed in this court its motion for an order dismissing the suit (1) for lack of jurisdiction;[1] and (2) because a similar suit, based upon an identical cause or causes of action has been filed against Charleston Lincoln Mercury, Inc., in the Court of Common Pleas for Charleston County, South Carolina. Defendant relies upon the facts illustrated by papers in the Clerk's file and presented in the depositions of the plaintiff and her husband. The motion came on to be heard before this court on March 9, 1976, and counsel duly explored the facts and the facets of their particular legal positions.

The original complaint, filed in this court on October 9, 1974 and amended October 28, 1974,[2] seeks recovery for damages allegedly suffered by the plaintiff because of a purchase of a Lincoln Continental automobile, admittedly manufactured by Ford, which she says was defective. On January 5, 1976, plaintiff filed in the Court of Common Pleas for Charleston County, South Carolina, an identical complaint against Charleston Lincoln Mercury, Inc., the dealer who sold the vehicle to the plaintiff. Plaintiff's amended complaint initially had three causes of action but plaintiff abandoned the third cause of action, and as the complaint now appears in the records of this court, defendant's action is two-fold, for breach of an express warranty, and for breach of implied warranty of merchantability. Counsel for the plaintiff candidly admitted that the suit was "entirely under the Uniform Commercial Code."[3]

It is not disputed that the purchase price of the automobile involved in the suit was $11,221.40, although plaintiff claimed that finance charges increased the total purchase price to $14,075.52. Initially, this posed a question of whether or not the carrying charges can be added as a part of the purchase price of the vehicle, but the decision of this issue is not necessary to the disposition of the motion to dismiss on the ground of lack of jurisdictional amount. Plaintiff admits the costs of the car and admits that the car was driven 12,000 miles, including at least one trip to Florida, despite the fact that plaintiff and her husband testified at their depositions that the car was "worth nothing" to them because of its lack of dependability. Defendant would have the court calculate the cost as $11,221.40 and deduct $1800.00 from the value of the car, as the value of the transportation in the car for the 12,000 miles at 15 cents per mile. It is obvious that if the $1800 were deducted from $11,221.40, there would remain $9,421.40, which is less than the jurisdictional amount.

It is elementary that where an action is brought on the grounds of diversity of citizenship under 28 U.S.C. § 1332, it is absolutely essential that the amount in controversy exceed the requisite jurisdictional sum and that this should appear either by the allegations of the complaint or otherwise from proof as to the loss suffered and sought to be recovered. *Pinel v. Pinel*, 240 U.S. 594, 36 S.Ct. 416, 60 L.Ed. 817 (1916); *Vraney v. Pinellas County*, 250 F.2d 617 (5th Cir. 1958). The amount in controversy is measured not by the monetary result of

---

1. 28 U.S.C. § 1332.

2. Fed.R.Civ.P. 15(a).

3. S.C.Code Ann. § 10.2–101 et seq. deals with sales. The basic warranty provisions are found in §§ 10.2–313 and 10.2–314.

determining the principle involved in the litigation, but by its pecuniary consequence to those involved. *Thomson v. Gaskill,* 315 U.S. 442, 62 S.Ct. 673, 86 L.Ed. 951 (1942); *Electro Therapy Products Corp. v. Strong,* 84 F.2d 766 (9th Cir. 1936); *Pennsylvania Ins. Co. v. Allstate Ins. Co.,* 226 F.Supp. 99 (D.Va.1964). It has been held that to establish the jurisdictional amount it is sufficient that there is a probability that the value of the matter in controversy exceeds such amount. *Jeffries v. Silver Cup Bakers,* 434 F.2d 310 (7th Cir. 1970).

Initially this court had jurisdiction when plaintiff exhibited a good faith allegation that $10,000 is in issue in this litigation, because, at the time the complaint was filed, it did not appear to a legal certainty that the recovery could not exceed the jurisdictional amount. *Anderson v. Moorer,* 372 F.2d 747 (5th Cir. 1967); *Sears Roebuck & Co. v. American Mutual Liability Ins. Co.,* 372 F.2d 435 (7th Cir. 1967); *Jaconski v. Avisun Corp.,* 359 F.2d 931 (3rd Cir. 1966). Before a suit will be dismissed for lack of jurisdiction, it must appear to a legal certainty that the plaintiff cannot recover in the lawsuit more than $10,000, exclusive of interests and costs. *Jeffries v. Silver Cup Bakers, Inc.,* 434 F.2d 310 (7th Cir. 1970), *Lewis v. Cook,* 419 F.2d 619 (6th Cir. 1969). The right to recover the jurisdictional amount must exist at the time of the institution of the suit in federal court, and events occurring subsequent to the institution of the suit in federal court do not oust jurisdiction though they reduce the amount recoverable below the statutory limit. *St. Paul Mercury & Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938); *Zunamon v. Brown,* 418 F.2d 883 (8th Cir. 1969); *Emland Builders, Inc. v. Shea,* 359 F.2d 927 (10th Cir. 1966). Considerable latitude may be given the plaintiff to establish the basis of his claim for damages for the purpose of satisfying the jurisdictional amount requirement in a diversity suit, but there must be something other than pure speculation on which the court and/or jury can rely. *Allbright v. R. J.*

*Reynolds Tobacco Co.,* 350 F.Supp. 341 (D.C. Pa.1972), affirmed, 485 F.2d 678 (3rd Cir. 1973), cert. denied 416 U.S. 951, 94 S.Ct. 1961, 40 L.Ed.2d 301.

The court here is faced with plaintiff's claim, on the one hand, but under the UCC, she is entitled to a limited measure of damages for breach of the warranty she claims—a difference between the value of the goods accepted and the value the goods would have had if they had been as warranted.[4] Defendant insists that plaintiff's claim is less than $10,000, not only because of the facts above discussed, but also because of the terms of the warranty which defendant exhibited to this court without objection by the plaintiff. This warranty, which is put out by the Ford Customer Service Division of Ford in what is known as the "Warranty Facts Booklet" for "1974 New Car and Light Truck Warranty" provides:

> Ford and the Selling Dealer jointly warrant for each 1974 model passenger car or light truck (P400 or lower series) sold by Ford that for the earliest of 12 months or 12,000 miles from either first use or retail delivery, the Selling Dealer will repair or replace free of charge any part except tires that is found to be defective in factory materials or workmanship under normal use in the United States or Canada.
>
> \* \* \* \* \* \*
>
> To the extent allowed by law, THIS WARRANTY IS IN PLACE OF all other warranties, express or implied, including the ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS. Under this warranty, repair or replacement of parts is the only remedy.

It is admitted that before the 12,000 miles had expired, plaintiff took the automobile back to the dealer for various complaints, but it is the claim of the plaintiff that the dealer never complied with the guarantee set forth in this warranty. The plaintiff, in her brief, states that she will stipulate that the implied warranty of merchantability

---

4. *See* S.C.Code Ann. § 10.2–714(2).

given by the defendant to the plaintiff was properly disclaimed or limited, under the criteria established in Section 10.2–316[5] of the Code of Laws of South Carolina (1962), to the replacement of parts found to be defective under normal use. Plaintiff contends that defendant-Ford failed to comply with the properly limited warranty, that is to replace defective parts, etc., within the warranty period and that the limited warranty or exclusive limited remedy has failed in its essential purpose, said purpose being to provide the plaintiff with a new, defect-free automobile. Under such circumstances the plaintiff invokes the general remedy provision of the Uniform Commercial Code in regard to breach of warranty, as set forth in Section 10.2–719(1)(a)[6] of the Code of Laws of South Carolina for 1962. Plaintiff claims damages under the provisions of the UCC, in the amount of the difference between the value of the automobile as it actually was and its value if it had been in the condition warranted, as well as incidental damages, "including but not limited to plaintiff's loss of use of the automobile in question, expense and inspection, receipt, transportation, care and custody of the automobile in question, and other reasonable expenses . . .."

It is easily seen that, even if defendant's theory of deduction for mileage driven be allowed and that reduction applied to the actual purchase price, instead of to the inflated price caused by the addition of finance charges, when the other damages which plaintiff claims are included, the amount may well exceed $10,000 under any calculation. It therefore does not appear to a legal certainty that the amount in controversy does not meet the jurisdictional amount required by 28 U.S.C. § 1332 in a diversity action.

Additionally, it has been recently decided by the United States Court of Appeals for the Fourth United States Circuit that the plaintiff may aggregate his claims against a single defendant, and only where it appears to a legal certainty that the plaintiff would not be entitled to the jurisdictional amount would his claim be subject to a motion for summary judgment for failure to meet the $10,000 jurisdictional requirement. *Hales v. Winn Dixie Stores, Inc.,* 500 F.2d 836, 845 (4th Cir. 1974). *See also Savarese v. Erie Transfer & Storage, Inc.,* 513 F.2d 140 (9th Cir. 1975); *Lynch v. Porter,* 446 F.2d 225 (8th Cir. 1971); *Lemmon v. Cedar Point, Inc.,* 406 F.2d 94 (6th Cir. 1969).

**5.** S.C.Code Ann. § 10.2–316 (1962) provides: "Exclusion or modification of warranties.—(1) If the agreement creates an express warranty words disclaiming it are inoperative.

(2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude the implied warranty of merchantability or of fitness for a particular purpose must be specific, and if the inclusion of such language creates an ambiguity in the contract as a whole it shall be resolved against the seller.

(3) Notwithstanding subsection (2)

(a) unless the circumstances indicate otherwise, all implied warranties are excluded by specific language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty; and

(b) when the buyer before entering into the contract has examined the goods or the sample or model as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him; and

(c) an implied warranty can also be excluded or modified by course of dealing or course of performance or, between merchants, by usage of trade.

(4) Remedies for breach of warranty can be limited in accordance with the provisions of this Title on liquidation or limitation of damages and on contractual modification of remedy (§ 10.2–718 and 10.2–719)."

**6.** S.C.Code Ann. § 10.2–719(1)(a) (1962) provides: "Contractual modification or limitation of remedy.

(a) the agreement may provide for remedies in addition to or in substitution for those provided in this Title and may limit or alter the measure of damages recoverable under this Title, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts."

South Carolina's UCC specifically provides for incidental and consequential damages as follows:

Section 10.2–715(1) and (2)

(1) Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and other reasonable expense incident to the delay or other breach.

(2) Consequential damages resulting from the seller's breach include

(a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and

(b) injury to person or property proximately resulting from any breach of warranty.

Authority for the application of this code section for such coverage as plaintiff here envisions is found in *Riley v. Ford Motor Co.*, 442 F.2d 670, 674 (5th Cir. 1971); *Beal v. General Motors Corp.*, 354 F.Supp. 423, 427–28 (D.Del.1973); and *Jones & McKnight Corp. v. Birdsboro Corp.*, 320 F.Supp. 39, 44 (N.D.Ill.1970).

It is obvious that a great many of these matters may be disposed of by the trial judge at the time of the processing of this litigation in the trial court. And finally, as is stated in *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288–89, 58 S.Ct. 586, 590,

It must appear to a legal certainty that the amount of claim is really for less than the jurisdictional amount to justify dismissal. The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction. Nor does the fact that the complaint discloses the existence of a valid defense of the claim. But if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed. (Citations omitted.)

It thus appears that the certainty prerequisite does not exist here, and the motion to dismiss for lack of jurisdiction is denied.

Defendant has also moved for dismissal because of the state court action pending against Charleston Lincoln Mercury and arising out of the same facts and transaction as this suit. Counsel for defendant invokes the doctrine of forum non conveniens as a ground for dismissal and, after arguments on the motion for dismissal were heard by the court, moved in the alternative for an order staying the federal action under some form of the abstention doctrine.

 Counsel's shift in emphasis from forum non conveniens to abstention was well-founded, because there appears to be no authority at all for the application of the former doctrine in this case. The provisions of 28 U.S.C. § 1404(a) for transfer of venue are often regarded as a codification of the forum non conveniens doctrine, although the statutory provisions are far more liberal than the common law version. That statute, of course, deals only with transfer of actions from one federal district to another and could not as such support dismissal here, but the court is unaware of any authority, and defendant has cited none, for the proposition that *any* form of the doctrine of forum non conveniens can justify dismissal of a federal court action because a state court action brought in the same location would have been more convenient for the defendant. Even where the doctrine may apply, however, the decision to dismiss or to hear an action must be made, in the court's discretion, on the basis of a balancing of the conveniences to the parties and the goal of the fairest trial of the action for all concerned. The plaintiff has the initial right to select the forum he desires, and that selection is entitled to great weight; "unless the balance is strongly in favor of

the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). Defendant in this case would prefer to have plaintiff sue both Ford and its dealer in a single action, but there is nothing in that commendable desire sufficient to warrant invocation of the doctrine of forum non conveniens to accomplish it.

■ The doctrine of abstention, unlike forum non conveniens, is intimately connected with the relationship of the state and federal judicial systems. Three forms of abstention by federal courts have won the approval of the Supreme Court in certain circumstances: (1) to avoid decision of a federal constitutional question where the case may be disposed of on questions of state law; (2) to avoid needless conflict with the administration by a state of its own affairs; and (3) to leave to the states the resolution of unsettled questions of state law. C. Wright, Law of Federal Courts, § 52 at 196. In each of these three situations, however, it is fair to say that abstention is not practiced as a matter of course; the need for abstention must be clearly shown before the court will decline to exercise its jurisdiction. The type of abstention urged by defendant here is actually a fourth type, not specifically approved or rejected by the Supreme Court, which is founded solely upon the authority of federal courts to control their own dockets and the desire to avoid undue inconvenience to defendants in certain cases. The Fourth Circuit expressed its approval of this form of abstention in *Amdur v. Lizars,* 372 F.2d 103 (4th Cir. 1967), a stockholder's derivative suit in which the court relied upon the Second Circuit's expression of the same doctrine in *Mottolese v. Kaufman,* 176 F.2d 301 (2d Cir. 1949). The court in *Amdur* did comment upon the scope of the doctrine it adopted, but undoubtedly this form of abstention should be practiced with considerable restraint. In *Meredith v. City of Winter Haven,* 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943), abstention was urged because of an uncertain question of state law, and the Supreme Court held:

The diversity jurisdiction was not conferred for the benefit of the federal courts or to serve their convenience. Its purpose was generally to afford to suitors an opportunity in such cases, at their option, to assert their rights in the federal rather than in the state courts. In the absence of some recognized public policy or defined principle guiding the exercise of the jurisdiction conferred, which would in exceptional cases warrant its nonexercise, it has from the first been deemed to be the duty of the federal courts, if their jurisdiction is properly invoked, to decide questions of state law whenever necessary to the rendition of a judgment. . . .

While *Meredith* certainly need not be regarded as controlling in this case, it is indicative of the general duty of district courts to make available, whenever possible, the forum which Congress intended to provide for diversity litigation.

■ Defendant relies heavily upon the decision in *Amdur,* but the facts in that case are not sufficiently similar to those in this action to warrant the court's reliance upon it as a controlling precedent. In that stockholder's derivative action, the court focussed upon the "inconvenience, loss of time, and expense inflicted upon the corporate defendant, and the danger that its treasury may be depleted by litigation supposedly prosecuted for its benefit." 372 F.2d at 107. The corporation in *Amdur* was a defendant in both state and federal derivative actions and the court affirmed the district court's decision to stay the federal proceedings. Defendant in this action, Ford Motor Company, is not named as a defendant in the state court suit and, although the defendant there is closely-related, being a Ford dealer, the parties concede that Ford and its dealer will likely raise dissimilar defenses to some of the allegations of plaintiff's identical state and federal complaints. In these circumstances, there is no justification for a stay of this action under any form of abstention recognized in this circuit or elsewhere, and defendant's motion for a stay must be denied.

Defendant's motion for dismissal is denied as to both grounds alleged, and the alternative motion for a stay is also denied.

AND IT IS SO ORDERED.