**Paul D. GUENVEUR, Jr., Plaintiff,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., an Illinois corporation, Defendant.**

Civ. A. No. 81–334.

United States District Court,
D. Delaware.

Dec. 3, 1982.

Frederick T. Haase, Jr., Roeberg & Associates, P.A., Wilmington, Del., for plaintiff.

F. Alton Tybout, Tybout, Redfearn, Casarino & Pell, Wilmington, Del., for defendant.

OPINION

MURRAY M. SCHWARTZ, District Judge.

This action arises from a motorcycle and automobile accident which occurred on September 23, 1979 involving plaintiff, Paul D. Guenveur, and an uninsured motorist, Copes. Plaintiff, a Delaware resident, was a passenger on a motorcycle operated by Joseph Gallucio. On July 28, 1981, plaintiff instituted a suit against Gallucio's insurance carrier, American Policyholders Insurance Company ("American"), in the Superior Court for New Castle County, Delaware, seeking recovery under Gallucio's uninsured motorist coverage. On July 30, 1981, he instituted this action against the defendant and his insurer, State Farm Mutual Automobile Company ("State Farm"), an Illinois corporation, seeking recovery under his own uninsured motorist coverage. Jurisdiction is founded upon diversity pursuant to 28

U.S.C. § 1333.[1] On June 14, 1982, defendant moved to stay this action pending the outcome of the Superior Court suit.[2] Presently before the Court is defendant's motion for a stay.

In the context of this dispute, defendant State Farm occupies the position of a "secondary insurer." In other words, plaintiff was injured while in a vehicle owned by another and covered by another insurance policy—namely American. Plaintiff's insurance policy with State Farm provides coverage in such a situation "only in the amount by which the limit of liability of this policy exceeds the total of the limit of liability of all other policies." This so-called "other insurance" clause insulates the secondary insurer to the extent of coverage provided by the primary insurer.

Both the American and State Farm policies provide limits of $10,000 for uninsured motorist coverage. As such, one would think State Farm could have no exposure since American's exposure as provider of primary coverage is coextensive and thus should dispose of the present action. Nonetheless, plaintiff asserts defendant failed to offer increased uninsured motorist coverage as required by law and consequently, defendant should be deemed to have provided such coverage. Plaintiff argues that defendant is liable for medical expenses and lost wages even if these exceed the $10,000 uninsured motorist coverage.

The parties have taken the liberty of using their respective statements of fact as vehicles for extended discussions of Delaware law concerning the extent of coverage and proof of special damages. Because of the disposition of the present motion for a stay, the Court need not immerse itself in this conundrum.

1. American is a Delaware corporation and therefore not subject to suit in federal court because diversity is lacking between it and Guenveur.

2. Defendant also moved for a separate trial on certain issues—namely the issues of liability and extent of uninsured motorist coverage. The parties disagreed over the treatment of this motion at a pretrial conference. Plaintiff con-

This case juxtaposes a district court's ability to control its docket and what has been referred to as the "unflagging obligation of federal courts to exercise the jurisdiction given them." *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). As a preliminary matter, we note what is not at issue herein. This case does not, at this juncture, present one of the three recognized grounds of abstention utilized by federal courts. These grounds are: first, *Pullman* abstention when a constitutional issue presented would probably be mooted by state court determination of state law, *Railroad Comm'n of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1940); second, *Burford* abstention when exercise of federal jurisdiction would substantially interfere with a state's efforts to enforce a coherent system of purely state regulation, *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); and third, *Younger* abstention when federal jurisdiction would disrupt state criminal or nuisance proceedings, *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The present posture of this action falls within the ambit of what has been referred to as a "fourth type" of abstention: the power of a district court to stay or dismiss an action on the sole ground that a concurrent similar action exists in state court which may resolve the controversy between the parties to the federal action. *See Cunningham v. Ford Motor Co.,* 413 F.Supp. 1101, 1106 (D.S.C.1976). The doctrinal underpinnings of this inherent discretionary power to stay proceedings pending resolution of parallel state court proceedings comes from the power of every court to "control the disposition of causes on its docket with economy of time and effort for itself, for counsel, and for liti-

tends that the Court foreclosed the issue and consequently does not address it. Defendant admits the Court noted an inclination to deny the motion but did not do so and therefore defendant addresses the motion. The Court discerns no benefit in entering this dispute at this juncture because resolution of the motion for stay disposes of the issue.

gants." *Landis v. North American Co.,* 299 U.S. 248, 254, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936). This inherent power extends to the most extreme form of stay—dismissal or abatement—but only in exceptional circumstances. *Colorado River Water Conservation District v. United States,* 424 U.S. at 817–18, 96 S.Ct. at 1246–47. The application of this exceptional circumstances standard to cases involving stays or deferrals rather than dismissals was rendered less certain by the Supreme Court's subsequent opinion in *Will v. Calvert Fire Insurance Co.,* 437 U.S. 655, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978), which indicates the existence of a broad discretionary authority to stay an action involving duplicative litigation. The opinion in *Will,* however, was a plurality and Justice Blackmun's concurrence fails to embrace such a view. As such, the heightened requirements of *Colorado Water* shall be applied. *See United States v. Cargill, Inc.,* 508 F.Supp. 734, 748 n. 55 (D.Del.1981).

▮▮▮ As a threshold consideration, the party seeking the stay, here State Farm, has the burden of proving that grounds exist to justify its grant. *Landis v. North American Co.,* 299 U.S. at 255, 57 S.Ct. at 166; *United States v. Cargill, Inc.,* 508 F.Supp. at 748; *Kahan v. Rosenstiel,* 285 F.Supp. 61, 62 (D.Del.1968). State Farm, therefore, must demonstrate either "exceptional circumstances" or "a clear case of hardship or inequity in being required to go forward" before a stay may issue. *Colorado Water Conservation District v. United States,* 424 U.S. at 817–19, 96 S.Ct. at 1246–47; *Landis v. North American Co.,* 299 U.S. at 255, 57 S.Ct. at 166.

Chief Judge Latchum had occasion in *Cargill* to set forth the analytical structure to be utilized in the determination of whether to grant a stay in circumstances similar to this case. First, at a minimum the actions in state and federal court must be parallel. *United States v. Cargill, Inc.,* 508 F.Supp. at 748. This criteria does not require, as plaintiff seems to suggest, that

'the actions be identical. The two actions may involve different parties. *Landis v. North American Co.,* 299 U.S. at 254, 57 S.Ct. at 166. The primary desideratum is that substantial similarity between the two actions is established. *Id.; cf. Chintala v. Diamond Reo Trucks, Inc.,* 393 F.Supp. 1392, 1393–94 (E.D.Pa.1975) (court stays federal action despite differing theories of liability, because comity, judicial economy and convenience furthered by stay). As applied to the facts in this case, the plaintiff is identical in both actions, both primary defendants are insurers, and the primary issues concern the liability of the uninsured motorist and the amount of damages. That the federal cause of action encompasses an additional claim does not obviate the parallel nature of the two actions.

With parallelism established, the Court must now engage in a balancing process whereby the "unflagging obligation" to exercise jurisdiction is juxtaposed against factors counselling against that exercise. *Colorado River Water Conservation District v. United States,* 424 U.S. at 818–19, 96 S.Ct. at 1246–47; *United States v. Cargill,* 508 F.Supp. at 749. Among the factors considered, as enumerated by the Court in *Cargill,* are: first, the inconvenience of the federal forum; second, the desirability of avoiding piecemeal litigation; third, the order in which jurisdiction was obtained; fourth, the existence of a federal policy militating for or against a stay; fifth, the identity of the issues, or lack thereof; and sixth, the existence of an important countervailing federal interest which federal courts might be more likely than state courts to respect or enforce. *Id.; see also* Annot., 5 A.L.R.Fed. 10, §§ 5–14 (enumerating factors). As applied to the facts of this case, most of the factors favor a stay.[3]

First, the federal forum is basically convenient to the parties. That State Farm is an Illinois corporation fails to render Delaware an inconvenient forum because of its degree of involvement in the insurance

---

**3.** Plaintiff's Answering Brief discusses the *Cargill* factors and fails to refute, in anything more than a cursory exhortation, defendant's conten-tion that each of the enumerated factors weighs in favor of granting the stay.

business within the State of Delaware. This factor, however, has only marginal significance in this context.

Second, a stay might avoid duplicative litigation. This is perhaps the most important factor. The parties agree that under principles of res judicata and collateral estoppel a judgment against American in the Superior Court action could not be used against State Farm here. A judgment for American, however, could be utilized by State Farm as preclusive against plaintiff here. As such, resolution of the Superior Court action may well dispose of this action. Plaintiff contends that since it might not dispose of this action, a stay would be improper. A well developed body of case law establishes that the preclusive effect of concurrent litigation need not be a certainty to justify a stay.[4] As one commentator notes:

> [T]he exercise of a federal court's discretion to stay its proceedings in favor of a concurrently pending state court suit is pointless unless disposition of the state action will be determinative of enough of the issues before the federal court to justify the stay in terms of conservation of time and effort of the court and of the litigants. In this connection, if the state court can properly determine issues before it which will be dispositive of issues before the federal court, identity is not required.

Annot., 5 A.L.R.Fed. 10, 89 (footnote omitted); *see also Landis v. North American Co.,* 299 U.S. 254, 57 S.Ct. at 166. Finally, plaintiff could have brought a single action in state court against both American and State Farm. Such an action, however, could not be brought in federal court. While his ability to bring a federal action based on diversity against State Farm alone is unquestioned, this results in parallel proceedings which constitute, by definition,

piecemeal litigation. A stay at this point allows one action to proceed and may resolve the federal action without further activity.

Third, jurisdiction in the state action was obtained first. Since the lapse of time between the initiation of the two suits was so insignificant—two days—this factor does not weigh heavily in the balance.

Fourth, federal policy militates in favor of granting a stay. Such a stay could result in substantial judicial economy. If the Superior Court finds either that the uninsured motorist was not at fault *or* that plaintiff's damages do not exceed $10,000, the federal action against State Farm will be precluded because State Farm's exposure, if any, starts above $10,000 and then only if the uninsured motorist coverage is expanded. A stay in this action will also promote comity between the state and federal courts by removing the possibility of inconsistent results. Furthermore, a stay may avoid the problems inherent in unnecessarily deciding questions of state law regarding extension of coverage and proof of damages.

Fifth, as previously noted, the issues are substantially identical. Plaintiff's Answering Brief acknowledges this in the following passage:

> 5. *Identity Of Issues In The Two Forums*
>
> The Superior Court action involves two issues:
>
> 1) Was Mr. Copes at fault? and
>
> 2) If so, what were Mr. Guenveur's damages?
>
> The action in this Court involves three issues:
>
> 1) Was Mr. Copes at Fault?
>
> 2) If so, what were Mr. Guenveur's damages? and

---

**4.** Plaintiff raises the argument that should the federal action proceed and judgment entered before the Superior Court action, this judgment might have preclusive effect since American might then utilize the federal judgment. This premise, while true, effectively turns the factual basis of both cases inside out—State Farm is only a secondary insurer and American the primary. As such, State Farm's liability is con-

tingent and extends only if American's coverage is insufficient. Plaintiff correctly notes that judicial economy will result regardless of which action proceeds to final disposition. Nonetheless, only the Superior Court is able to dispose of both actions while avoiding the additional claim posed by the federal action. The argument posited by plaintiff truly represents a case of the tail wagging the dog.

3) What are the uninsured motorist limits in the three State Farm policies?

Thus, there is an identity of some, but not all issues in the two forums.

*Plaintiff's Answering Brief,* at 30. As previously discussed, only substantial similarity of issues is required to justify a stay. Since the resolution of issues one and two in the Superior Court action may foreclose consideration of issue three in this action, this factor weighs heavily in favor of a stay.

The sixth, enumerated *Cargill* factor—the existence of an important countervailing federal interest which federal courts might be more likely than state courts to respect or enforce—is not present in this diversity action. Since the existence of this factor would militate against granting a stay, its absence once again tips the balance in favor of defendant's motion.

Finally, each party has propounded other arguments directed towards the propriety of the issuance of a stay. Plaintiff contends, on the basis of a quasi-estoppel argument, that defendant should be precluded from receiving a stay in this action because it failed to make the present motion for a significant period of time after it knew of the concurrent state action. The legal grounds of this quasi-estoppel theory remain a mystery and the Court expresses no opinion on its legal validity. Nonetheless, this action may not be characterized as being expeditiously handled by either party. In fact, defendant alleges that any harm to plaintiff results from his own dilatoriness. Rather than enter the fray of this adversarial smokescreen, the Court simply notes that plaintiff has demonstrated no harm if this matter were stayed. At this juncture, judicial economy and simple good sense support the conclusion that a stay should be granted.