SEA COLONY, INC., a Delaware corporation, and Sea Colony Development Corporation, a Delaware corporation, Plaintiffs,

v.

ALCAN ALUMINUM CORPORATION, a New York corporation, Defendant/Third-Party Plaintiff,

v.

ENAMEL PRODUCTS & PLATING COMPANY, and Rohm & Haas Company, and Georgia Pacific Corporation, Third-Party Defendants.

Civ. A. No. 85–361 LON.

United States District Court, D. Delaware.

Feb. 3, 1987.

David C. McBride, of Young, Conaway, Stargatt & Taylor, Wilmington, Del., of counsel: Wayne S. Hyatt, and Shelah M. Fidellman, of Hyatt & Rhoads, Washington, D.C., for plaintiffs.

John A. Elzufon, and Joanne B. Wills, of Elzufon & Bailey, Wilmington, Del., for defendant/third-party plaintiff.

Robert G. Young, of Young & Sherlock, Dover, Del., for defendant Enamel Products & Plating Co.

Roger A. Akin, and John J. Schreppler, II, of Sawyer & Akin, Wilmington, Del., for defendant Rohm & Haas Co.

F. Alton Tybout, of Tybout, Redfearn, Casarino & Pell, Wilmington, Del., for Georgia Pacific Corp.

LONGOBARDI, District Judge.

This is a diversity action involving a dispute between Sea Colony, Inc. ("Sea Colony") and Sea Colony Development Corporation, Inc. ("Sea Colony Development") as Plaintiffs and Alcan Aluminum ("Alcan") as Defendant, and concerns roofing systems provided by Alcan for use in nine condominium buildings known collectively as Sea Colony East, Phases I, II, III, IV, V, VI and VII in Bethany Beach, Delaware. Alcan has filed a Third-Party Complaint against Enamel Products & Plating Company ("Enamel"), Rohm & Haas Corporation ("Rohm & Haas") and Georgia Pacific Corporation ("Georgia Pacific").[1] Each of the Third-Party Defendants has counterclaimed against Alcan and cross-claimed against each of the other Third-Party Defendants.

The complaint alleges breaches of express written and oral warranties and implied warranties of merchantability and fitness for a particular purpose, as well as claims of negligent misrepresentation as to the quality, suitability and effectiveness of the roofing systems. *See* D.I. 1. As among the Third-Party Defendants, there

---

**1.** Alcan supplies metal roofing panels for the buildings. These are purchased by Alcan and shipped to Enamel for laminating with the acrylic film Korad which is used to coat the roofs. Enamel purchases Korad from Rohm & Haas and Georgia Pacific. After lamination, Alcan fabricates the sheets into roofing panels which are sold as "Ultra Rib." Docket Item ("D.I.") 65 at 1–2.

are additional claims of negligent manufacture of Korad, the acrylic film used in coating the roofs. *See* D.I. 4.[2]

Over a year after the filing of the instant action, the Councils of Unit Owners of Sea Colony East, Phases III, IV, VI and VII filed actions against various Defendants, including Sea Colony, Sea Colony Development and Alcan, in Delaware Superior Court. Alcan then filed Third-Party Complaints in order to bring all of the Third-Party Defendants in the District Court action into the Superior Court actions. Similarly, Sea Colony and Sea Colony Development cross-claimed against Alcan in the Superior Court actions. It appears undisputed that, as a result of the pleadings in Superior Court, all of the issues and all of the parties involved in the federal court action are also before the State court.[3] Further, the Councils of Unit Owners, as Delaware entities, cannot be parties to the federal court action because jurisdiction at present is based on diversity of citizenship. Both Sea Colony and Sea Colony Development are Delaware corporations and, as such, participation by the Councils of Unit Owners would destroy complete diversity.[4]

Therefore, Plaintiffs have moved the Court to stay the federal diversity action pending the outcome of the State court litigation. D.I. 60.[5] In point of fact, Rohm & Haas is the only party that has expressed any opposition to the stay and, indeed, each of the other parties has indicated affirmatively in a letter to the Court that it does not oppose the stay. In support of their motion, Plaintiffs advance principles of federal-state comity and note that because the Councils of Unit Owners are not involved in the federal proceeding, adjudication in Superior Court will avoid piecemeal litigation. For the reasons set forth below, the Court concludes that the interests of federal-state comity and efficient allocation of judicial resources counsel in favor of granting the stay.

## STAY OF A PARALLEL ACTION

Plaintiffs contend that all of the issues involved in the present action are before the Superior Court and that the presence of the Councils in State court makes that forum more appropriate. Because only State law claims are raised, Plaintiffs urge that a denial of the stay will lead to multiple litigation concerning identical issues with the concomitant potential for varying results. As such, Plaintiffs contend that the Court should exercise its discretion to stay the present federal court action.

■ The general rule applied in the District Courts is that the "pendency of a state court proceeding is not a reason for a federal court to decline to exercise jurisdiction established by Congress." *Harris v.*

---

**2.** The case of *Council of Unit Owners of Sea Colony East, Phase II Condominiums v. Carl M. Freeman Associates, et al,* Del.Super. C.A. No. 84C-0C-28, involved various claims of defects in Phase II of the Condominiums. Much of the Plaintiff's claims in that action involved alleged failures in the roofing systems of the two Phase II buildings. The action was settled with Sea Colony and Sea Colony Development agreeing to pay the Council approximately $140,000 as reimbursement for costs incurred in repairing and replacing the roof on one of the Phase II buildings and an agreement to pay further sums for repair and replacement of the other building's roof should that become necessary. D.I. 1, ¶ 17.

**3.** There appears to be some dispute as to whether all of the Phases are involved in the Superior Court actions. Rohm & Haas argues that Phases I, II and V are not involved in the State court. Plaintiffs contend that they are by virtue of

cross-claims filed against Alcan in those actions. Regardless of whether the Councils of Unit Owners for Phases I, II and V filed suit in the Superior Court, because Sea Colony and Sea Colony Development have cross-claimed against Alcan, litigation over those three phases can proceed in the Superior Court as it would in the District Court.

**4.** As Plaintiffs note, diversity would not be destroyed if the Councils joined as co-plaintiffs. The Councils apparently have indicated no willingness to do so. Further, their joinder as co-plaintiffs would raise serious questions as to collusion to defeat the requirements of diversity jurisdiction. Indeed, Rohm & Haas does not argue that the Councils could participate in the federal action. Rather, it urges that their participation is unnecessary.

**5.** Plaintiffs have not moved for dismissal of the present action as an alternative disposition.

*Pernsley,* 755 F.2d 338, 345 (3d Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 331, 88 L.Ed.2d 314 (1985) (noting *McClellan v. Carland,* 217 U.S. 268, 281–82, 30 S.Ct. 501, 504–05, 54 L.Ed. 762 (1910)). Within the parameters of that general rule, the power to stay or dismiss federal proceedings pending resolution of a State court action rests within the sound discretion of the trial court. *Harvey & Harvey v. Delaware Solid Waste Authority,* 600 F.Supp. 1369, 1377 (D.Del.1985); *Gilbane Bldg. Co. v. Nemours Foundation,* 568 F.Supp. 1085, 1089 (D.Del.1983). This discretion stems from the District Court's inherent power to control its docket. Regardless, the Supreme Court has plainly indicated that the power to stay or dismiss under the putative "fourth abstention" doctrine is to be exercised only in "exceptional circumstances." *See, e.g., Moses H. Cone Hospital v. Mercury Constr. Corp.,* 460 U.S. 1, 14, 103 S.Ct. 927, 936, 74 L.Ed.2d 765 (1983) (quoting *Colorado River Water Cons. Dist. v. U.S.,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976)).

■ Two prerequisites are important. First, the State and federal proceedings must, of course, be parallel. *See Gilbane,* 568 F.Supp. at 1089. This does not mean that the proceedings must be identical, but rather substantially similar. *Guenveur v. State Farm Mut. Auto. Ins. Co.,* 551 F.Supp. 1044, 1046 (D.Del.1982); *Landis v. North American Co.,* 299 U.S. 248, 254, 57 S.Ct. 163, 165–66, 81 L.Ed. 153 (1936). Second, the party seeking the stay must carry the burden of demonstrating that adequate grounds exist to justify granting the stay. *Gilbane,* 568 F.Supp. at 1088; *Guenveur,* 551 F.Supp. at 1046. Thus, Plaintiffs must demonstrate either the existence of "exceptional circumstances" or "a clear case of hardship or inequity in being required to go forward" before the stay will issue. *Guenveur,* 551 F.Supp. at 1046 (noting *Colorado River,* 424 U.S. at 817–19, 96 S.Ct. at 1246–47; *Landis,* 299 U.S. at 255, 57 S.Ct. at 166).

The Supreme Court has counseled that in determining whether to dismiss or stay a federal proceeding, the District Court must carefully juxtapose its "unflagging obligation" to exercise jurisdiction with the factors that might militate against that exercise in any given case. *Gilbane,* 568 F.Supp. at 1088–89 (quoting *Colorado River,* 424 U.S. at 818–19, 96 S.Ct. at 1246–47). In *Moses H. Cone* the Court concisely reiterated the process for engaging in this balancing:

> [T]he decision whether to dismiss a federal action because of a parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction.

460 U.S. at 16, 103 S.Ct. at 937.

■ In *Colorado River,* discussing the propriety of dismissing a federal court action in light of a pending State court action, the Court delineated four factors to be considered and balanced in determining whether exceptional circumstances are present in a given case: (1) the inconvenience of the federal forum; (2) the desirability of avoiding piecemeal litigation; (3) the order in which the proceedings were initiated; and (4) the presence of a *res* or property over which jurisdiction has been asserted. *Harvey & Harvey,* 600 F.Supp. at 1377 (noting *Moses H. Cone,* 460 U.S. at 15–16, 103 S.Ct. at 936–37; *Colorado River,* 424 U.S. at 818–19, 96 S.Ct. at 1246–47). In *Moses H. Cone,* the Court added an additional two factors in the balancing analysis: (5) whether federal law provides the rule of decision on the merits, 460 U.S. at 23, 103 S.Ct. at 941 (noting *Will v. Calvert Fire Ins. Co.,* 437 U.S. 655, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978)); *see also Harvey & Harvey,* 600 F.Supp. at 1377; and (6) the adequacy of State court proceedings to protect plaintiff's rights. 460 U.S. at 26, 103 S.Ct. at 942. Finally, this Court has in the past considered three additional factors in the *Colorado River* balancing process: (7) the identity of issues in the two forums or the lack thereof; (8) the existence of a federal policy militating ei-

ther in favor of or against the stay, *Gilbane*, 568 F.Supp. at 1089 *noted in Harvey & Harvey*, 600 F.Supp. at 1377; and (9) the existence of an important countervailing federal interest which federal courts might be more likely than State courts to respect or enforce. *United States v. Cargill, Inc.*, 508 F.Supp. 734, 749 (D.Del.1981).

In *Moses H. Cone*, the Supreme Court indicated that "[b]y far the most important factor" in its decision to uphold the dismissal of the federal proceedings in *Colorado River* was the strong federal policy in favor of avoiding piecemeal litigation. 460 U.S. at 16, 103 S.Ct. at 937. Mindful of the weight of that factor as well as the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them", *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 937, *quoted in Harris*, 755 F.2d at 345, and cognizant that only a carefully considered judgment based on the clearest justifications will meet the narrowly construed parallel litigation exception and the exceptional circumstances test of *Colorado River* and *Moses H. Cone*, the Court turns to a consideration of the nine factors outlined *supra*.

1. *Inconvenience of the Federal Forum*

■ The federal forum clearly is not inconvenient for any of the parties, especially in light of the fact that the parallel proceedings are in Delaware State court. Plaintiffs urge that the diversity bar to participation by the Councils makes the federal forum unavailable to them and *a fortiori* inconvenient. D.I. 61 at 7. The Court is not convinced that the presence or absence of the Councils goes to the convenience of the forum. Among other things, convenience refers to ease of access to sources of proof, availability of compulsory process and enforceability of judgments. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055

(1947), *cited with approval in Colorado River*, 424 U.S. at 818, 96 S.Ct. at 1246–47, *noted in Gilbane*, 568 F.Supp. at 1089. As such, the Court finds that Plaintiffs have not demonstrated that the federal forum is inconvenient.[6]

2. *Avoidance of Piecemeal Litigation*

As noted *supra*, the Supreme Court referred to the policy of avoiding piecemeal litigation as the most important factor in *Colorado River*.

Consideration of this factor entails inquiry into the scope of the proceeding and nature of available defenses in the pending State court action. *Gilbane*, 568 F.Supp. at 1090. The inquiry should determine whether "the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, [and] whether such parties are amenable to process in that proceeding." *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495, 62 S.Ct. 1173, 1176, 86 L.Ed. 1620 (1942), *cited with approval in Colorado River*, 424 U.S. at 818, 96 S.Ct. at 1247, *quoted in Gilbane*, 568 F.Supp. at 1090. There is little dispute that a denial of the stay would result in two separate lawsuits over virtually the same issues because the Councils will likely pursue their actions in the State court. Rohm & Haas argues that "the relief sought in the District Court case will be identical to that sought in Superior Court, and ultimately that benefit will inure to the unit owners." Letter to the Court, October 20, 1986. The Court cannot agree. Regardless of the benefit, the Councils represent the owners of the units. Surely those individuals have an interest in being represented and heard in the litigation. Simply because they could potentially benefit from the result in the federal case

---

**6.** Alcan argues that because both of the forums are located in Wilmington, the convenience factor is at best neutral. In *Colorado River*, however, the Court, in keeping with the notion that the exceptional circumstances test is used to determine whether a federal court should *surrender* jurisdiction, framed the test to reflect the *inconvenience* of the federal forum. 424 U.S. at 818, 96 S.Ct. at 1246–47. Hence, if convenience is neutral, it does not counsel in favor of granting the stay.

does not mean that they have no interest in participating in the litigation.[7]

Additionally, as noted *supra*, Rohm & Haas argues that a stay in the federal proceedings will lead to a bifurcation of litigation. Rohm & Haas argues that because only the Councils of Phases III, IV, VI and VII have sued in State court, the roofing systems for Phases I, II and V are not at issue in these proceedings. Conversely, in the federal action, Plaintiffs seek compensatory and declaratory relief concerning all Phases. Hence, the argument advanced is that regardless of the outcome, two trials will be needed. Rohm & Haas' argument ignores the cross-claims filed in Superior Court which place the roofing systems for Phases I, II and V at issue. Similarly, the Court is not convinced that the disposition of the federal case will necessarily resolve the Councils' claims. Conversely, because all of the parties in this action are before the Superior Court, those actions would resolve all such issues. The Court concludes that policy against piecemeal litigation counsels in favor of granting the stay.

### 3. *Order in which Jurisdiction Was Obtained*

It is clear that the federal proceedings were initiated prior to the State proceedings. Nonetheless, the priority factor, "as with the other *Colorado River* factors, is to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand. Thus, priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone*, 460 U.S. at 21, 103 S.Ct. at 940.

Plaintiffs urge that "significant progress has not been made in this proceeding." D.I. 61 at 9. Rohm & Haas disputes that contention. The Court has rendered no major decisions and no case dispositive motions have been filed. A Rule 16 conference was held and trial was scheduled for March 3, 1987. Alcan has moved for a continuance of that date and that motion is apparently unopposed. Indeed, given the length of time required to brief this dispute and the suspension of discovery in the interim, it is certain that the March 3, 1987 trial date is unrealistic. Although some discovery has taken place, a review of the record reveals that no depositions have been taken.

Much of Rohm & Haas' argument seems to flow from a concern over the cost of beginning anew in Superior Court. Yet, after some consideration, the argument appears to be of little moment. First, the Court sees no reason why any discovery had in the instant case would not be pertinent to those actions and could not easily be transferred to the Superior Court actions. Second, the costs of two litigations far outweigh the cost of starting anew in Superior Court, especially given the circumstances of the case. While the Court cannot conclude that this action has progressed no further than the State court action, I likewise cannot conclude that substantial steps have been taken in this action. This conclusion is tempered by the fact that *all* of the parties except for Rohm & Haas have either affirmatively indicated their desire to proceed or have indicated no opposition to proceeding in State court. If expense or delay were overwhelming concerns, presumably other parties would have raised these issues. Consequently, I cannot conclude that the federal case has reached a stage wherein it would be unfair or unjust to stay the action pending the Superior Court proceedings.

### 4. *Presence of Res or Property*

There is no *res* or property over which jurisdiction has been asserted by either court.

### 5. *Rule of Decision on the Merits*

Federal law clearly does not provide the rule of decision on the merits.

---

**7.** As Alcan notes, adjudication in the State court actions could potentially provide more complete relief. Plaintiffs here seek compensatory damages from Alcan and the Third-Party Defendants. In the State court action, the Councils seek both compensatory and punitive damages.

### 6. Adequacy of State Courts

Given that the State court will apply Delaware law and the dispute relates to condominiums located in Delaware, it is beyond dispute that the Superior Court actions will adequately protect all parties' rights.

### 7. Identity of Issues

There is little dispute that the State and federal proceedings are parallel and, if not identical, then at least substantially similar. Rohm & Haas argues that Phases I, II and V are not before this State court because the Councils of Unit Owners for those Phases have not brought suit. Nonetheless, it appears undisputed that by virtue of cross-claims, the federal Plaintiffs have brought Phases I, II and V into issue in the State court. All of the parties to the federal action are involved in the State court actions.

### 8. Federal Policy Militating in Favor or Against a Stay

There are two clear federal policies that militate in favor of granting the stay. First, judicial economy dictates that if all of the issues before this Court are also before the Superior Court, separate trials will result in the inefficient expenditure of valuable judicial resources. To do so merely because the instant action was first filed in federal court elevates form over substance in adhering to the proposition that federal courts have an "unflagging obligation" to exercise jurisdiction.

Second, a stay will promote comity between federal and state courts by removing the potential for differing results in the two actions. *See, e.g., Guenveur,* 551 F.Supp. at 1047. Indeed, while differing results are not necessarily likely, the procedural posture of the case indicates that differing results could engender difficult problems in reaching an ultimate disposition of the issues involved in the litigation.[8]

### 9. Important Countervailing Federal Interest which Federal Courts Are More Likely to Respect

There is no federal interest present which a federal court is more likely to respect or enforce than the State court. The absence of this factor counsels in favor of granting the stay. *See Guenveur,* 551 F.Supp. at 1048.

### CONCLUSION

After a careful balancing of the factors discussed above, I conclude that exceptional circumstances do exist which mandate an exercise of discretion to stay the federal action pending resolution of the State court actions. The Court is mindful that the task in cases involving *Colorado River* abstention is "not to find some substantial reason for the exercise of federal jurisdiction ... [but] rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the *surrender* of that juris-

---

**8.** Both Plaintiffs and Alcan have raised a third federal policy factor tied closely to the "state-versus-federal-law" factor first articulated in *Will, supra,* namely, the propriety of granting a stay when unsettled and far-reaching issues of State law are implicated. To this end, they argue that Delaware's condominium laws are developing and should be interpreted by Delaware courts. *Accord Dome Condominium Ass'n v. Goldenberg,* 442 F.Supp. 438, 446 (S.D. Fla.1977). In short, they contend that "federal review of issues involved in this case would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." D.I. 61 at 12. Regardless, neither side has provided sufficient information as to what important policy is implicated. In the main, this case involves the kinds of tort and contract questions that routinely present themselves in the daily business of the courts. Alcan notes that the issue of whether the Councils are real parties in interest in the State actions is presently the subject of a motion to dismiss filed by Sea Colony and Sea Colony Development. This issue could impact on the developing condominium law of Delaware. Nonetheless, any dispute over the ability of the Councils to recover on these causes of action cannot be litigated in this Court because the Councils are not parties to the federal action. Hence, I cannot conclude that any federal policy of deferring when unsettled questions of State law are presented is applicable.

**1330**

diction." *Moses H. Cone*, 460 U.S. at 25–26, 103 S.Ct. at 942.

All of the parties, except for Rohm & Haas, have affirmatively indicated a willingness to proceed in State court or, at the very least, have not opposed Plaintiffs' motion. It appears undisputed that the issues in both actions are identical except that the Councils seek punitive damages in the State court action. The federal action has not proceeded to such a point that the granting of the stay would work hardship or be substantially unjust. Indeed, any discovery taken in this action can easily be transferred to the State court actions. The State court actions are in Delaware State court and Delaware law supplies the rule of decision. Federal interests in judicial economy and federal-state comity dictate that a stay is appropriate. Equally important, the Councils, as representatives of the condominium owners, are potentially interested parties to the action. They are present in the State court and cannot intervene in this action because of the bar imposed by the requirement of complete diversity. Hence, granting the stay will avoid piecemeal litigation.

This action will be stayed pending disposition of the State court actions.