LANDIS ET AL. *v.* NORTH AMERICAN CO.*

No. 221.   Argued November 9, 1936.—Decided December 7, 1936.

---

*Together with No. 222, *Landis et al.* v. *American Water Works & Electric Co., Inc.*   Certiorari to the United States Court of Appeals for the District of Columbia.

*Solicitor General Reed* and *Assistant Attorney General
Jackson,* with whom *Attorney General Cummings, Mr.
John J. Burns,* General Counsel, Securities & Exchange
Commission, and *Messrs. Benjamin V. Cohen* and *Thomas
G. Corcoran* were on the brief, for petitioners.

*Mr. John C. Higgins,* with whom *Messrs. John S. Flan-
nery* and *Joseph P. Tumulty* were on the brief, for
respondents.

MR. JUSTICE CARDOZO delivered the opinion of the
Court.

The controversy hinges upon the power of a court to
stay proceedings in one suit until the decision of another,
and upon the propriety of using such a power in a given
situation.

Respondents, non-registered holding c o m p a n i e s
brought suit in the District Court for the District of
Columbia to enjoin enforcement of the Public Utility
Holding Company Act of 1935 (c. 687, 49 Stat. 803) on
the ground that the Act in its entirety is unconstitutional
and void. The complaint in No. 221 (the suit by the
North American Company) was filed November 26, 1935;
the complaint in No. 222 (the suit by the American Water
Works & Electric Company) was filed the next day. By
concession the two plaintiffs are holding companies with-
in the meaning of the Act, and must register there-
under if the Act is valid as to them. One plaintiff, the
North American Company, is at the apex of a pyramid
which includes subsidiary holding companies as well as

subsidiary operating companies, these last being engaged as public utilities in supplying gas and electricity to consumers in different States. The other plaintiff, American Water Works & Electric Company, is at the apex of another pyramid including like subsidiaries. The defendants in both suits (petitioners in this court) are the members of the Securities and Exchange Commission, the Attorney General of the United States, and the Postmaster General.

On November 26, 1935, the Commission filed a bill of complaint in the District Court of the United States for the Southern District of New York to compel other holding companies, members of a different public utility system, to register with the Commission in accordance with the statute. At the beginning, the defendants were the Electric Bond & Share Company, the parent holding company, and five intermediate holding company subsidiaries. Sixteen other holding company subsidiaries were later added as defendants with the Government's consent. All the twenty-two defendants, parties to that suit, appeared and answered the complaint. All joined in a cross-bill contesting the validity of the Act and praying a decree restraining its enforcement. To give opportunity for full relief, the present petitioners appeared as cross-defendants, answering the cross-bill and opposing an injunction.

On December 7, 1935, the Attorney General filed a notice of motion in behalf of the petitioners for a stay of proceedings in Nos. 221 and 222, pending at that time in the District of Columbia. The petitioners had not yet submitted their answer to the bills, but their position as supporters of the statute in its application to respondents was made abundantly apparent. By the notice of motion it was shown that other suits to restrain the enforcement of the Act had been filed by other plaintiffs in the District of Columbia, and many more in other districts. The Government professed its anxiety to secure an early

determination of its rights, and to that end pledged itself to proceed with all due diligence to prosecute the suit which it had chosen as a test. There were representations that the trial of a multitude of suits would have a tendency "to clog the courts, overtax the facilities of the Government, and make against that orderly and economical disposition of the controversy that is the Government's aim." Accordingly the court was asked to stay proceedings in the suits at bar "until the validity of said Act has been determined by the Supreme Court of the United States" in the Electric Bond and Share case, "or until that case is otherwise terminated." To that motion the plaintiffs filed an answer on December 12, 1935, contesting the power of the court to grant the requested stay, asserting that the questions to be passed upon in their suits were not identical with the questions presented in the test one, pointing out that the Act, even if valid as applied to some companies, might be invalid as applied to others, and dwelling upon the loss that they were suffering day by day while the menace of the Act obstructed their business and cast a cloud on its legality.

Upon the argument of the motion the Attorney General and the Securities and Exchange Commission announced that until the validity of the Act had been determined by this court in a civil suit which would be diligently prosecuted, neither the Attorney General nor the Commission would seek to enforce the criminal penalties of the Act, and that even after such determination they would not seek to exact penalties for earlier offenses. Written notice to that effect was given to all prosecuting officers. At the same time the Postmaster General announced that even if he had authority, he would not exclude any company from using the mails because of any violation of the Act pending the judicial determination of its validity by this court. Also, the Commission issued a regulation permitting a holding company, when register-

ing, to reserve any legal or constitutional right and to stipulate that its registration should be void and of no effect in the event that such a reservation should be adjudged invalid or ineffective. Finally, the Attorney General offered to submit to a temporary injunction restraining the enforcement of the Act until the Electric Bond and Share case should be determined by this court. On the other side, the plaintiffs offered to consolidate their cases and thus dispose of them as one. They also offered, as we were informed upon the argument, to select a group of suits, not more than three or four, to be tried at the same time, with the understanding that any others would then be held in abeyance. These offers were rejected, and the Government stood upon its motion.

How many suits for like relief were pending in the same and other districts was the subject of oral representations when the motion was submitted. By consent, however, an affidavit by the Attorney General was afterwards supplied with a stipulation of counsel supplementary thereto. The affidavit and stipulation were accepted by the Court, and give precision to representations that would otherwise be vague. From the affidavit it appeared that, in addition to the suits at bar, forty-seven suits had been brought in thirteen districts, five of them, afterwards reduced to four, in the District of Columbia, the others elsewhere. From the stipulation it appeared, however, that none of the cases in other districts would be heard or determined on the merits. The bills were to be dismissed or process was to be quashed in so far as relief was demanded against any officials who are parties to the present suits, and this for the reason that as to all such defendants the venue was improper. In a few suits there were to be decrees *pro confesso* against local officials who had been instructed by the Attorney General not to offer a defense. The number of pending suits was thus reduced to those in the District of Columbia, though there

was a possibility, more or less uncertain, that there would be a renewal in that district of the suits begun elsewhere and discontinued or dismissed. Along with the affidavit and stipulation the Government submitted a copy of the complaint and the cross-bill in the suit against the Bond and Share Company.

Upon this showing the District Judge reached the conclusion that the motion should be granted, stating his reasons in an opinion. "A decision," he said, "by the Supreme Court in the Electric Bond and Share case, even if it should not dispose of all the questions involved, would certainly narrow the issues in the pending cases and assist in the determination of the questions of law involved." However, the granting of the motion would be conditioned upon diligent and active prosecution of the Government's suit. An order was made on January 9, 1936, staying all proceedings upon the terms and conditions stated in the opinion. From that order the Court of Appeals for the District of Columbia allowed a special appeal, which was heard in April, 1936 (four judges sitting), and decided in June. There were three opinions: an opinion by Mr. Justice Van Orsdel, concurred in by the Chief Justice; a separate opinion by Mr. Justice Groner; and a dissenting opinion by Mr. Justice Stephens. 85 F. (2d) 398. The first opinion states the question before the court to be whether or not the District Court had "abused its discretionary power in the control of its docket." Standing alone, this statement would seem to concede that there was power, the inquiry being merely whether the power had been discreetly exercised. The concession, if made, was speedily withdrawn. A few sentences later we are told that the power is confined to cases where the issues and the parties are the same. The separate opinion of Groner, J., treats the subject with greater flexibility. He suggests that after joinder of issue there may be a postponement of the trial if the court

in the control of its own docket shall find that course expedient. He couples this with a statement that a stay so indefinite as the one before him would be too broad in any case. None the less, much latitude of judgment would have been left to the trial judge if the standards of that opinion had been adopted as a guide. But plainly they were not. The order of the Court of Appeals in each of the two suits reverses the stay order and remands the cause "for further proceedings not inconsistent with the opinion of this court." Evidently the trial judge was expected to conform to doctrine expounded for his instruction in the course of an opinion, yet he would have difficulty in knowing which opinion to select. He might believe that comity or deference constrained him to submit to the opinion approved by two members of the reviewing court, since none had been accepted by the vote of a majority. At the very least there was a likelihood, and indeed almost a certainty, of confusion and embarrassment. In such circumstances the call is plain for a decision that will mark with greater clearness the bounds of power and discretion. We granted certiorari that this result might be attained.

Viewing the problem as one of power, and of power only, we find ourselves unable to assent to the suggestion that before proceedings in one suit may be stayed to abide the proceedings in another, the parties to the two causes must be shown to be the same and the issues identical. Indeed, counsel for the respondents, if we understand his argument aright, is at one with us in that regard, whatever may have been his attitude at the hearing in the courts below. Apart, however, from any concession, the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must

weigh competing interests and maintain an even balance. *Kansas City Southern Ry.* v. *United States,* 282 U. S. 760, 763; *Enelow* v. *New York Life Ins. Co.,* 293 U. S. 379, 382. True, the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else. Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both. Considerations such as these, however, are counsels of moderation rather than limitations upon power. There are indeed opinions, though none of them in this court, that give color to a stricter rule. Impressed with the likelihood or danger of abuse, some courts have stated broadly that, irrespective of particular conditions, there is no power by a stay to compel an unwilling litigant to wait upon the outcome of a controversy to which he is a stranger. *Dolbeer* v. *Stout,* 139 N. Y. 486, 489; 34 N. E. 1102; *Rosenberg* v. *Slotchin,* 181 App. Div. 137, 138; 168 N. Y. S. 101; cf. *Wadleigh* v. *Veazie,* Fed. Cas. No. 17,031; *Checker Cab Mfg. Co.* v. *Checker Taxi Co.,* 26 F. (2d) 752; *Jefferson Standard Life Ins. Co.* v. *Keeton,* 292 Fed. 53. Such a formula, as we view it, is too mechanical and narrow. *Kansas City Southern Ry.* v. *United States, supra; Friedman* v. *Harrington,* 56 Fed. 860; *Amos* v. *Chadwick,* L. R. 9 Ch. Div. 459; 4 *id.* 869, 872. All the cases advancing it could have been adequately disposed of on the ground that discretion was abused by a stay of indefinite duration in the absence of a pressing need. If they stand for more than this, we are unwilling to accept them. Occasions may arise when it would be "a scandal to the administration of justice" in the phrase of Jessel, M. R. (*Amos* v. *Chadwick,* L. R. 9 Ch. Div. 459, 462), if power to coördinate the business of the court efficiently and sensibly were lacking altogether.

We must be on our guard against depriving the processes of justice of their suppleness of adaptation to varying conditions. Especially in cases of extraordinary public moment, the individual may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted. In these Holding Company Act cases great issues are involved, great in their complexity, great in their significance. On the facts there will be need for the minute investigation of intercorporate relations, linked in a web of baffling intricacy. On the law there will be novel problems of far-reaching importance to the parties and the public. An application for a stay in suits so weighty and unusual will not always fit within the mould appropriate to an application for such relief in a suit upon a bill of goods. True, a decision in the cause then pending in New York may not settle every question of fact and law in suits by other companies, but in all likelihood it will settle many and simplify them all. Even so, the burden of making out the justice and wisdom of a departure from the beaten track lay heavily on the petitioners, suppliants for relief, and discretion was abused if the stay was not kept within the bounds of moderation.

We are satisfied that the limits of a fair discretion are exceeded in so far as the stay is to continue in effect after the decision by the District Court in the suit against the Bond and Share Company, and until the determination by this court of any appeal therefrom. Already the proceedings in the District Court have continued more than a year. With the possibility of an intermediate appeal to the Circuit Court of Appeals, a second year or even more may go by before this court will be able to pass upon the Act. Whether the stay would have been proper if more narrowly confined will be considered later on. For the moment we fix the uttermost limit as the date of the first

decision in the suit selected as a test, laying to one side the question whether it should even go so far. How the District Court in New York will decide the issues in that case is not to be predicted now. The Act may be held valid altogether, or valid in parts and invalid in others, or void in its entirety. Whatever the decision, the respondents are to be stayed by the terms of the challenged order until this court has had its say. They are not even at liberty, in case of an adjudication of partial invalidity, to bring themselves within the class adjudged to be exempt, though their membership in such a class may be uncertain or contested. Relief so drastic and unusual overpasses the limits of any reasonable need, at least upon the showing made when the motion was submitted.

We think the answer is inadequate that in the contingencies suggested the respondents will be at liberty to move to vacate the stay, and will prevail upon that motion if they can satisfy the court that its restraints are then oppressive. To drive them to that course is to make them shoulder a burden that should be carried by the Government. The stay is immoderate and hence unlawful unless so framed in its inception that its force will be spent within reasonable limits, so far at least as they are susceptible of prevision and description. When once those limits have been reached, the fetters should fall off. To put the thought in other words, an order which is to continue by its terms for an immoderate stretch of time is not to be upheld as moderate because conceivably the court that made it may be persuaded at a later time to undo what it has done. Disapproval of the very terms that have already been approved as reasonable is at best a doubtful outcome of an application for revision. If a second stay is necessary during the course of an appeal, the petitioners must bear the burden, when that stage shall have arrived, of making obvious the need. Enough for present purposes that they have not done so yet.

From the stay in its operation during the course of an appeal, we pass to the stay in its operation while the test suit is undetermined. That aspect of the order is subject to separate considerations and calls for separate treatment. The Government contends that a stay thus limited in duration is not unreasonably long, and that the respondents have been sufficiently protected against substantial loss or prejudice. The respondents deny that this is so, and insist that loss or prejudice, substantial in degree, is possible and even probable. We do not find it necessary to determine whether a stay to continue until the decision by the District Judge, and then ending automatically, would be moderate or excessive if viewed as of the time when the order differently conditioned was placed upon the files. Almost a year has gone by since the entry of that order, and in the intervening months many things have happened. All the parties have united in bringing these happenings to our notice and in inviting us to consider them. In the suit against the Bond and Share Company the facts have now been settled by stipulation; the briefs have been prepared; the case has been argued on the merits; and a decision may be expected within a reasonable time. With these happenings disclosed, a decision by this court, if directed to the fairness of the stay order as of the date of its entry and if based upon a record made up substantially a year ago, would have little relation to present day realities. "This court is a court of review and limits the exercise of its jurisdiction in accordance with its function." *Aero Transit Co.* v. *Georgia Public Service Comm'n,* 295 U. S. 285, 294. To bring about a fitting correspondence between rulings and realities, there must be a new appraisal of the facts by the court whose function it is to exercise discretion, and an appraisal in the light of the situation existing and developed at the time of the rehearing. *Patterson* v. *Alabama,* 294 U. S. 600, 607; *Watts, Watts*

& Co. v. *Unione Austriaca,* 248 U. S. 9, 21. Benefit and hardship will be set off, the one against the other, and upon an ascertainment of the balance discretionary judgment will be exercised anew.

In each suit, the decree of the Court of Appeals is reversed, the order of the District Court vacated, and the cause remanded to the District Court to determine the motion for a stay in accordance with the principles laid down in this opinion.

*Reversed.*

Mr. Justice McReynolds concurs in the result.

Mr. Justice Stone took no part in the consideration or decision of these cases.