Daniel **ELLSBERG** et al., Plaintiffs,

v.

John N. **MITCHELL** et al., Defendants.

Civ. A. No. 1879–72.

United States District Court,
District of Columbia,
Civil Division.

Jan. 24, 1973.

David Rein, Forer and Rein, Washington, D. C., for plaintiffs.

A. William Olson, Asst. Atty. Gen., Robert L. Keuch, Benjamin C. Flannagan, Attys., Internal Security Div., Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM OPINION AND ORDER

FLANNERY, District Judge.

■ Daniel Ellsberg and Anthony Russo are on trial in federal court in California for publishing what have become known as the Pentagon Papers.[1] The trial began January 17, 1973, and is expected to take three or four months. During pretrial proceedings the Government disclosed that electronic eavesdropping had occurred, but the judge refused to compel disclosure of the intercepted communication because it was not related to the defendants on trial. The matter before this court is a civil action brought under Title III of the Omnibus Crime Control and Safe Streets Act of 1968[2] which provides a remedy for a person whose communication has been intercepted by illegal electronic eavesdropping.[3] On October 17, 1972, the Government moved to stay all proceedings in this civil action until the termination of the criminal trial in

California.[4] That motion is presently before this court.

During pretrial proceedings in the criminal case, the presiding judge, the Honorable Wm. Matthew Byrne, Jr., required the Government to state whether it had conducted electronic surveillance which possibly could relate to the case against Ellsberg and Russo. The Government denied that any defendant had been overheard, but admitted that one of the defense attorneys or consultants had been overheard in a call made from a place under surveillance.[5] The Government submitted the surveillance record *in camera* for the judge to determine whether either defendant had standing to contest the legality of the surveillance. Since neither defendant had been overheard, the judge determined they had no standing to object on fourth amendment grounds. Defendants argued that they had standing under their sixth amendment right to counsel because the Government had overheard a conversation of one of the defendants' attorneys or consultants. After examining the surveillance record *in camera*, Judge Byrne concluded that defendants had no standing on sixth amendment grounds because "the statement intercepted on a single date in question regards an event that is utterly without significance or relation in any way to

1. *See* United States v. Russo, No. 9373–CD–WMB (C.D.Cal., filed Dec. 29, 1971).

2. 82 Stat. 211, as amended, 18 U.S.C. §§ 2510–2520 (1970).

3. 18 U.S.C. § 2520 (1970) provides:
   Any person whose wire or oral communication is intercepted, disclosed, or used in violation of this chapter shall (1) have a civil cause of action against any person who intercepts, discloses, or uses, or procures any other person to intercept, disclose, or use such communications, and (2) be entitled to recover from any such person—
   (a) actual damages but not less than liquidated damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is higher;
   (b) punitive damages; and
   (c) a reasonable attorney's fee and other litigation costs reasonably incurred.

   A good faith reliance on a court order or legislative authorization shall constitute a complete defense to any civil or criminal action brought under this chapter or under any other law.

4. Inherent in the power of every court to control its docket is the power to stay proceedings in the interest of justice. Landis v. North America Co., 299 U.S. 248, 254–255, 57 S.Ct. 163, 81 L.Ed. 153 (1936).

5. The conversation was overheard during the course of a "foreign intelligence" wiretap. No warrant had been obtained for the wiretap, only an authorization by the Attorney General. Russo v. Byrne, 409 U.S. 1219, 93 S.Ct. 21, 34 L.Ed.2d 30 (1972) (Douglas, Circuit Justice) (application for stay of criminal trial granted).

this case. Nothing in the intercepted communication could conceivably come within the attorney-client privilege." [6] Accepting the district court's finding that the intercepted communication was irrelevant to the criminal prosecution, the United States Court of Appeals for the Ninth Circuit affirmed the decision that defendants lacked standing to challenge the legality of the surveillance.[7]

On September 19, 1972, plaintiffs instituted this action for money damages under 18 U.S.C. § 2520 (1970) [8] alleging that the electronic surveillance had been conducted illegally. There are two groups of plaintiffs in this civil action: the defendants in the criminal trial (Ellsberg and Russo) and their attorneys and consultants.[9] Defendants in this action are the heads of all government agencies which may have conducted electronic surveillance against plaintiffs.[10]

Concerned that plaintiffs will use the broad civil discovery procedures to discover information which is unavailable to them in the criminal case, the Government seeks a stay of all proceedings in the civil action until completion of the criminal trial in California. In support of its motion, the Government argues that this civil action should be stayed to avoid interference with the criminal case. It cautions that a ruling by this court may conflict with a ruling by the court in California and that publicity from this case may influence the unsequestered jury in the criminal case. Moreover, it points out that plaintiffs' cause of action will not be affected significantly by a stay of the civil proceedings because the surveillance record will be preserved for future examination.

In determining whether to stay a civil action, the court must balance the competing interests of the parties.[11] However, since a plaintiff has the right to prosecute his cause of action without unnecessary delay, the initial burden must be on the defendant applying for a stay to demonstrate a need, however slight, which justifies a delay in the proceedings. Otherwise, any defendant could obtain a stay merely by showing that the delay would not harm plaintiff's cause of action. Only after the applicant for a stay has carried this initial burden must the court balance the competing interests of the parties.[12] Even in cases of extraordi-

6. Petitioner's Brief for Certiorari, App. B at 5a–6a, Russo v. Byrne, No. 72–307, cert. denied, 409 U.S. 1013, 93 S.Ct. 433, 34 L.Ed.2d 307 (1972) (oral opinion of the district court).

7. Id., App. A at 2a (opinion and judgment of the court of appeals).

8. Note 3 supra.

9. The attorneys and consultants are Stanley Sheinbaum, Leonard R. Boudin, Charles R. Nesson, Charles E. Goodell, Arthur I. Berman, Dolores A. Donovan, Richard Falk, Morton Halperin, Leonard I. Weinglass, H. Peter Young, Jeffrey B. Kupers, Barrett S. Litt, Michael P. Balaban, Barry Portman, Thomas Hayden, Robert Scheer and Adam Bennion.

10. The defendants are John N. Mitchell, Attorney General during much of the period covered by the facts alleged in the complaint; Richard Kleindienst, Attorney General of the United States; Patrick Gray, III, Director of Federal Bureau of Investigation; John E. Ingersoll, Director of the Bureau of Narcotics and Dangerous Drugs; Vernon D. Acree, Commissioner of the Bureau of Customs; James J. Rowley, Director of the United States Secret Service; Charles Walters, Commissioner of the Internal Revenue Service; William Rogers, Secretary of State; Melvin Laird, Secretary of Defense; Richard Helms, Director of Central Intelligence Agency; and John Doe and Richard Doe, parties as yet unknown.

11. Landis v. North America Co., 299 U.S. 248, 254–255, 57 S.Ct. 163, 81 L.Ed. 153 (1936); Dellinger v. Mitchell, 143 U.S. App.D.C. 60, 64, 65, 442 F.2d 782, 786, 787 (1971).

12. See Landis v. North America Co., 299 U.S. 248, 254–255, 57 S.Ct. 163, 81 L.Ed. 153 (1936); Dellinger v. Mitchell, 143 U.S.App.D.C. 60, 65, 442 F.2d 782, 787 (1971). In Dellinger the court stated that the issuance of a stay requires "not only a showing of 'need' in terms of protecting the other litigation involved but

nary public moment, the individual will not be required to submit to delay unless the Government demonstrates that "the public welfare or convenience will thereby be promoted." [13]

■ In the present case the Government has failed to establish any real need for a stay of all proceedings. This court intends to avoid any possibility of conflict with the pending criminal trial, but the Government has not demonstrated how the proceedings in this civil case could interfere with the trial of the criminal case. No concrete possibility of interference exists because the intercepted communication has been found to be "utterly without significance or relation in any way" to the criminal case. Indeed, the Government must recognize the inconsistency of its position. In the criminal case the Government contended that the intercepted communication was completely unrelated to the defendants on trial. In the case before this court, however, the Government contends that the intercepted communication is so closely related to the criminal case that disclosure of its contents would jeopardize the criminal trial, but it fails to state any facts which support such a conclusion.

The present case will not require this court to decide any issue which has been or will be decided in the criminal trial. This case focuses on the legality of the surveillance. Judge Byrne ruled that the defendants in the criminal trial had no standing to challenge the legality of the surveillance. He also ruled that the attorneys and consultants could not challenge the legality of the surveillance, even though the Government admitted overhearing an attorney or consultant, because their rights were not in issue in the criminal trial.[14] Thus, the issue presented in the present case cannot be raised in the criminal trial.[15] Unable to litigate the legality of the surveillance in the criminal case, the attorneys and consultants seek civil review in this court as provided by statute.

. . . also . . . a balanced finding that such need overrides the injury to the parties being stayed." *Id.*

In *Landis* the Government carried its initial burden by showing that there were forty-seven pending cases with closely related, if not identical, questions of law. A decision by the Supreme Court in a single test case would greatly simplify the proceedings in the remaining forty-six cases. Landis v. North America Co., *supra* at 252–253, 57 S.Ct. 163. In *Dellinger* the Government carried its initial burden by demonstrating a clear possibility of interference between the civil and criminal cases pending at the same time. *See* notes 18–21 *infra* and accompanying text.

13. Landis v. North America Co., 299 U.S. 248, 256, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936).

14. In opposing the criminal defendants' petition for certiorari to review Judge Byrne's wiretap decision, the Government stated:

In this criminal proceeding, of course, the only rights that are to be litigated are those of petitioners, the defendants on trial. Alleged violations of any rights of their counsel or consultants that do not bear on this case should not be engrafted onto this criminal trial. Respondent's Brief in Opposition to Certiorari at 15 n. 10, Russo v. Byrne, No. 72–307, cert. denied, 409 U.S. 1013, 93 S.Ct. 433, 34 L.Ed.2d 307 (1972).

15. The only possibility of interference with the criminal case would arise if Judge Byrne's wiretap decision is reversed on appeal. If a higher court determines that defendants have standing to challenge the legality of the surveillance, then the same issue would arise in both the civil and criminal cases. But Judge Byrne's decision has been affirmed once by the Ninth Circuit. In affirming, the Ninth Circuit accepted Judge Byrne's finding that the intercepted communication is unrelated to the criminal trial. *See* note 7 *supra*.

Moreover, the Government only requests a stay for the duration of the criminal trial, not the appeal. Even if the requested stay is granted, the civil proceedings would resume before the completion of the appeals in the criminal case. Therefore, the possibility of interference resulting from reversal of Judge Byrne's decision would exist notwithstanding the issuance of the stay.

Attempting to demonstrate some possibility of interference with the criminal case, the Government contends that these civil proceedings will require disclosure of the intercepted communication and that disclosure will interfere with the criminal trial. However, it is unlikely that the present case will necessitate disclosure because the legality of the surveillance does not depend on the content of the intercepted communication.[16] The issue of the legality of the surveillance will require this court to examine the authorization for the wiretap, but information concerning the authorization can be obtained without requiring disclosure of the conversations which were overheard. Although the identity of the person who was overheard may have to be disclosed, the Government has not shown how such disclosure could interfere with the criminal trial.

Even if it becomes necessary to disclose the contents of the intercepted communication, it is not apparent how this disclosure could jeopardize the criminal trial. Judge Byrne determined that the intercepted communication is "utterly without significance or relation in any way" to the criminal case. Information concerning a defense attorney which is unrelated to the defendants on trial would not have an appreciable effect on the jury. And since the criminal defendants have joined as plaintiffs in the civil action, they cannot complain if their rights in the criminal trial are jeopardized by the civil action.

No immediate harm will result from allowing this case to go forward and any danger which develops in the future can be prevented at that time. The proceedings in this case, particularly discovery proceedings, will be closely monitored by the court. The Government remains free to seek protective measures when and if it can demonstrate some possibility of interference with the criminal trial.[17]

Denial of the requested stay in the present case is consistent with the decision in Dellinger v. Mitchell,[18] a case which resembles the situation confronting this court.[19] In that case, the court of appeals reversed a stay order because the stay (a) was applicable to civil plaintiffs who were not criminal defendants, and (b) persisted until completion of all appellate and remand proceedings

16. Disclosure of the content of the intercepted communication may be necessary to compute damages but, in view of the court's calendar, the question of damages is unlikely to arise in the near future. It may be in the public interest to postpone discovery on the damages issue until plaintiffs establish that the electronic surveillance was illegal. Consequently, the possibility of disclosure for computing damages has little bearing on the issue of interference with the criminal trial.

17. See Dellinger v. Mitchell, 143 U.S.App. D.C. 60, 65, 442 F.2d 782, 787 (1971).

18. 143 U.S.App.D.C. 60, 442 F.2d 782 (1971).

19. Plaintiffs in *Dellinger* were eight individuals and nine organizations. The individuals were defendants in the Chicago Trial. During the Chicago Trial the Government admitted that certain defendants had been overheard by electronic surveillance, *id.* at 61–62; 442 F.2d at 783–784; but the court refused to compel disclosure of the intercepted communication. The nine organizational plaintiffs in the civil case alleged that electronic surveillance of themselves and others similarly situated impaired their anti-war and civil rights activities. Plaintiffs sought damages and declaratory, injunctive and other appropriate relief. The Government moved for a stay of all proceedings in the civil case, contending that the civil case would interfere with the criminal trial. The trial court granted a stay of all proceedings until final disposition of the criminal case in the trial and appellate courts, including the Supreme Court. *Id.* at 62–63; 442 F.2d at 784–785.

in the criminal case.[20] Here, as in *Dellinger,* plaintiffs include parties who are not defendants in the criminal trial. However, unlike in *Dellinger,* the Government requests a stay only for the duration of the criminal trial, not the appellate and remand proceedings.

Although in dictum the *Dellinger* court assumed that the circumstances of that case justified a stay until termination of the criminal trial,[21] factual distinctions between *Dellinger* and the present case render the *Dellinger* dictum inapposite. In *Dellinger* the criminal defendants themselves had been overheard by electronic surveillance. Consequently, the issue of the legality of the surveillance was squarely before the criminal trial court. By filing the civil action, the *Dellinger* plaintiffs thrust the same issue before the civil court. Thus, there existed a clear possibility of interference between the civil and criminal proceedings. It was under these circumstances that the court of appeals assumed that a stay was justified until termination of the criminal trial. In the case before this court, the criminal defendants were not overheard by electronic surveillance; the intercepted communication has been found to be "utterly without significance or relation in any way" to the criminal case; and the issue of the legality of the surveillance cannot be raised in the criminal trial. Therefore, the possibility of interference between the civil and criminal proceedings which was present in *Dellinger* is in no way present in the case before this court.

For the foregoing reasons, it is

Ordered that Defendants' Motion for Stay of Proceedings be, and it hereby is, denied.

20. *Id.* at 63–64; 442 F.2d at 785–786.

21. *Id.* at 63; 442 F.2d at 785. This issue was not actually before the court of ap-

peals because the criminal trial terminated prior to the appellate decision in the civil case.