CELLCO PARTNERSHIP d/b/a
Verizon Wireless, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 02–280C.

United States Court of Federal Claims.

Oct. 22, 2002.

William Truman Lake, Wilmer, Cutler & Pickering, Washington, DC, for plaintiff.

Patricia Mary McCarthy, U.S. Department of Justice, Civil Div.–Commercial Litigation Br., Washington, DC, for defendant.

## OPINION

WILSON, Judge.

This case is before the Court on defendant's Motion to Stay the Proceedings on the ground that related cases are pending before the U.S. Supreme Court and the U.S. Court of Appeals for the D.C. Circuit. Plaintiff alleges that a contract was created by the FCC's acceptance of plaintiff's high bid for spectrum licenses and that the FCC materially breached the contract by failing to deliver the licenses in a timely manner. Based on the Court's "paramount obligation to exercise jurisdiction timely in cases before it,"

*Cherokee Nation of Okla. v. United States,* 124 F.3d 1413, 1416 (Fed.Cir.1997), and because the economic harm to the plaintiff in staying the proceedings outweighs the harm to the defendant if the case progresses, the Court denied the Motion to Stay Proceedings following oral argument and issued an order establishing deadlines for further filings related to plaintiff's pending Motion for Summary Judgment.[1] This Memorandum Opinion discusses in more detail the reasons articulated from the bench for denying the Defendant's Motion for a Stay.

## BACKGROUND

In January 2001, plaintiff Cellco Partnership, d/b/a Verizon Wireless (Verizon) successfully bid $8.69 billion for reauctioned wireless spectrum licenses and paid the required deposit of approximately $1.7 billion to the FCC. The licenses were originally awarded in 1997 to NextWave Personal Communications Inc. (NextWave) and Urban Communicators PCS Limited Partnership (UrbanCom),[2] pursuant to a competitive bidding procedure authorized by 47 U.S.C. § 309(j). Both carriers had difficulty raising the necessary capital to make license installment payments. The FCC gave the carriers a deadline of July 1998 to restructure the payments. NextWave opted not to restructure the payments and declared bankruptcy in June 1998. After extensive litigation in bankruptcy court and the U.S. Court of Appeals for the Second Circuit, the FCC determined in January 2000 that NextWave and UrbanCom's licenses had automatically cancelled as a result of their failure to meet their payment obligations, and initiated reauction proceedings (Auction No. 35).

The FCC's decision to cancel and subsequently reauction the contested licenses gave rise to two lawsuits relevant to defendant's Motion to Stay the Proceedings in the U.S. Court of Federal Claims. First, NextWave filed a petition for review of the FCC decision to cancel and reauction the licenses in the U.S. Court of Appeals for the D.C. Circuit. The D.C. Circuit reversed the FCC decision to cancel NextWave's licenses and the FCC returned the licenses to NextWave. The FCC filed a petition for a writ of certiorari in the Supreme Court, which was granted. *NextWave Personal Communications, Inc. v. FCC,* 254 F.3d 130 (D.C.Cir.2001), *cert. granted,* 122 S.Ct. 1202 (U.S. Mar. 4, 2002) (No. 01–653). Oral argument took place on October 8, 2002.

The second related matter is plaintiff's appeal of the FCC's March 27, 2002 Partial Refund Order pending in the D.C. Circuit. *Cellco Partnership d/b/a Verizon Wireless v. FCC,* D.C.Cir. No. 02–1110 (filed Apr. 8, 2002). Pursuant to the Partial Refund Order, the FCC agreed to refund all but three percent of the net winning bids for the contested licenses, including a refund of $1.4 billion to Verizon. (Order, *In the Matter of Requests for Refunds of Down Payments Made in Auction No. 35,* 17 FCC Rcd 6283, 2002 WL 464682 (2002)). However, the FCC declined to relieve Verizon of the "obligation to pay their full bid amounts for licenses won in Auction No. 35." *Id.* The FCC's Partial Refund Order responded to a request filed on January 4, 2002, by plaintiff and others seeking a return of the down payments, and a March 5, 2002 notice of rescission informing the FCC that "to the extent the contract is not already void or voided, and to the extent [plaintiffs] have the right to void the auction contract as to the NextWave licenses, [plaintiffs] elect to void the contract." (Pl. Opp'n to Def. Mot. to Stay, App. at 089 (Tuller letter)). Oral argument before the D.C. Circuit is scheduled for April 15, 2003.

On September 12, 2002, the FCC filed a Public Notice soliciting public comment on the disposition of the licenses reauctioned

---

1. Order, *Cellco Partnership d/b/a Verizon Wireless v. The United States* (No. 02–280C) (Fed.Cl. Oct. 1, 2002).

2. Verizon successfully bid on 113 licenses during Auction No. 35. Verizon received 33 licenses immediately. The FCC was unable to deliver the 67 licenses previously owned by NextWave and the 13 licenses previously owned by UrbanCom.

Although Verizon has not attempted to void the alleged contract with respect to the 13 UrbanCom licenses, the company argues that the FCC has made it clear that it would reject any attempt to void the alleged contract for the 13 licenses for the same reasons it rejected Verizon's attempt to void the alleged contract for the NextWave licenses.

during Auction No. 35. (Public Notice, *Commission Seeks Comment on Disposition of Down Payments and Pending Applications for Licenses Won During Auction No. 35 and Spectrum Formerly Licensed to NextWave Personal Communications Inc., NextWave Power Partners, Inc. and Urban Comm—North Carolina, Inc.*, WT Dkt. No. 02–276, FCC 02–248, 2002 WL 31039895 (Sept. 12, 2002)). The FCC seeks public comment on two possible options: 1) a full refund with an option to dismiss all pending applications, or 2) a selective opt-out provision for pending applications. Under the first option, the bidder would also be required to release any other claims against the United States and the FCC arising out of Auction No. 35. *Id.* The FCC also seeks comment on whether bidders who choose to dismiss pending applications should be "barred from participating in the reauction of the license or otherwise obtaining such licenses for a period of time." *Id.* Initial comments were due on October 11, 2002 and reply comments are due on October 21, 2002.

## ANALYSIS

■ The power of this Court to stay proceedings is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936). "When and how to stay proceedings is within the sound discretion" of this Court. *Cherokee Nation of Okla.*, 124 F.3d at 1416. Suspension of judicial proceedings may be appropriate to serve the "interest of judicial economy and to avoid duplication of effort and the possibility of inconsistent results." *Cooley v. United States*, 219 Ct.Cl. 587, 1979 WL 10170 (1979).

■ The Court employs a three part test in deciding whether to stay a case. First, a trial court must identify a pressing need for the stay. Second, "[t]he court must balance the interests favoring a stay against

interests frustrated by the action." "Overarching this balancing is the court's paramount obligation to exercise jurisdiction timely in cases properly before it." *Cherokee Nation of Okla.*, 124 F.3d at 1416. When a related case is pending before another court, a trial court may also consider: "(i) principles of comity, with the normal rules favoring the court in which a case is first filed, (ii) judicial economy, focusing, *inter alia*, on whether a stay is necessary to avoid duplicative litigation, and (iii) the motives of the party seeking the stay, with courts disfavoring stays where the movant is seeking to avoid adverse precedent." *Commonwealth Edison Co. v. United States*, 46 Fed.Cl. 29 (2000).

■ Defendant's primary argument in support of a stay is the risk of inconsistent rulings on plaintiff's breach of contract claim. At oral argument, defendant's counsel essentially conceded that the issues presented in the NextWave Supreme Court appeal are not sufficiently related to justify a stay.[3] The question presented in the Supreme Court appeal is whether Section 525 of the Bankruptcy Code, 11 U.S.C. § 525, precluded the FCC's cancellation of NextWave's licenses upon nonpayment.[4] The Supreme Court's resolution of the issue of whether the bankruptcy code prevents the FCC from taking back the NextWave licenses will not implicate Verizon's breach of contract claim. Verizon's claim for damages for a breach that plaintiff alleges has already occurred will likely survive regardless of the outcome of the Supreme Court matter. If the FCC loses the appeal, and Auction No. 35 is voided, the FCC's refund of the remaining deposit will not automatically dispose of Verizon's damage claims. If the FCC wins, and NextWave returns the licenses to the FCC, Verizon's damage claims for the earlier breach would remain unresolved.

Defendant makes a stronger argument that Verizon's pending D.C. Circuit challenge to the FCC's Partial Refund Order poses a

---

3. Transcript of Oral Argument at 5, 16.

4. Section 525 provides in pertinent part, "a governmental unit may not deny, revoke, suspend or refuse to renew a license ... solely because such

[a] bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act."

risk of inconsistent results, especially in light of plaintiff's position that the D.C. Circuit has jurisdiction to decide the status of plaintiff's alleged contract with the FCC, as well as its administratively-based claims. However, the Court is persuaded that the risk of inconsistent rulings on Verizon's breach of contract challenge to the FCC's Partial Refund Order is minimal because the D.C. Circuit could uphold or reverse the Partial Refund Order purely on administrative law grounds without addressing the contractual issues raised here. Indeed, the D.C. Circuit may decide, as the government argues, that it lacks jurisdiction to decide the contract claim. In addition, as plaintiff points out, the D.C. Circuit lacks jurisdiction to decide plaintiff's money damages claim, and therefore will not dispose of all of the issues raised in the case pending before the Court of Federal Claims.

Balanced against the risk of inconsistent results stemming from the pendency of the D.C. Circuit appeal are the harms allegedly suffered by Verizon as a result of the FCC's failure to deliver the spectrum licenses or a full refund of its deposit. According to plaintiff, the FCC continues to hold $261 million of Verizon's down payment, and Verizon remains liable to pay the remaining $8.4 billion of its winning bid on 10 days notice, if and when the FCC reclaims the licenses from NextWave.

Plaintiff claims that each month of additional delay in adjudicating its claim costs the company $500,000 in interest on the down payment. (Tr. at 43). In addition, Verizon's contingent debt of more than $8 billion has adversely affected its credit rating. According to plaintiff, the downgraded credit ratings attributable to the company's contingent liability have increased the costs incurred by Verizon Wireless and its parent, Verizon, to obtain capital and impaired their ability to raise capital in the equity markets. (Pl. Opp'n to Def. Mot. to Stay, App. at 072 (Heitman Decl. ¶ 7)). Instead of using the disputed funds on other opportunities and investments, Verizon claims it has incurred costs to make alternative arrangements to provide some of the capacity that the Auction No. 35 licenses would have provided. Defendant does not contest these economic harms, at least in the context of the Motion to Stay.[5]

The Court concludes that the concrete economic harm to the plaintiff imposed by a stay outweighs the speculative risk of inconsistent rulings on related issues in the absence of a stay. Moreover, although it is conceivable that the FCC may ultimately take action in response to the comments solicited by its recently issued public notice, it is not clear at this point in time if the FCC will decide to refund the remaining deposits and under what conditions. Even if the FCC agreed to fully refund the deposits, such action would not legally dispose of plaintiff's breach of contract and damages claims based on the FCC's alleged failure to timely deliver the licenses.

Defendant raises additional arguments in support of the need for a stay that relate to jurisdictional and merit-based challenges to plaintiff's complaint. Such matters fall outside the confines of the applicable balancing test in determining whether to stay a case. Consequently, defendant's Motion to Stay this action was DENIED, and consistent with the Court's October 1, 2002 order, defendant's response to plaintiff's Motion for Summary Judgment shall be filed no later than October 28, 2002.

5. In its September 12, 2002 Public Notice, the FCC "[took] official notice of the [declining] status of the capital markets and other economic events" adversely affecting the telecommunications industry. Public Notice, *Commission Seeks Comment on Disposition of Down Payments*, WT Dkt. No. 02–276 at 4, 2002 WL 31039895.