**MARKEL INTERNATIONAL INSURANCE COMPANY,**
Plaintiff,

v.

**Sharon O'QUINN and Latrina Keith, as Natural Parent and Next Friend of Christopher Barrios, a deceased minor, Defendants.**

**Civil Action No. CV208–043.**

United States District Court,
S.D. Georgia,
Brunswick Division.

July 2, 2008.

---

Alycen A. Moss, Kenan G. Loomis, Cozen & O'Connor, Atlanta, GA, for Plaintiff.

Brandon Slade Clark, Law Office of Brandon Clark, Brunswick, GA, Brent J. Savage, Savage & Turner, PC, Inman Gregory Hodges, William J. Hunter, Oliver, Maner & Gray, LLP, Savannah, GA, for Defendants.

## *ORDER*

ANTHONY A. ALAIMO, District Judge.

Plaintiff, Markel International Insurance Company ("Markel"), filed the above-captioned case against Defendants, Sharon O'Quinn and Latrina Keith, seeking a declaratory judgment that it is not obligated to defend or indemnify O'Quinn in an underlying suit brought against her by Keith, which is also pending before the Court, *Keith v. O'Quinn*, CV208–39 (S.D.Ga.).

Presently before the Court is Plaintiff's motion to stay the underlying proceedings until the Court resolves the insurance coverage issue raised in Markel's declaratory judgment lawsuit. Because the prejudice to the insurer in defending a case that may lack coverage outweighs the prejudice to the other parties in delaying the resolution of the underlying case, the motion to stay will be **GRANTED.**

## *BACKGROUND*

On March 4, 2008, Keith's underlying suit against O'Quinn was filed in the State Court of Glynn County, Georgia, and O'Quinn was served with the complaint on March 7, 2008. On April 4, 2008, Markel agreed to defend O'Quinn under a reservation of rights. Markel alleges that, without the insurer's knowledge, O'Quinn retained counsel, William McHugh, to represent her in the underlying case. On April 1, 2008, O'Quinn removed the case to federal court. On May 5, 2008, Markel filed its motion to stay.

On May 7, 2008, Keith filed a motion to amend her complaint, which was granted

by Magistrate Judge James E. Graham on May 29, 2008.[1] The amended complaint in the underlying action alleges that Keith's son, Christopher Barrios, was moved from foster care to the custody of his father, Mike Barrios. Mike Barrios lived in a trailer park owned by O'Quinn. Convicted child molesters also lived in the trailer park, and Keith contends that O'Quinn knew that the trailer park community was dangerous for young children. On March 8, 2007, according to Keith, Christopher Barrios was kidnapped from a school bus stop across the street from the trailer park by trailer-park resident George Edenfield through trickery and deceit. Keith further avers that Edenfield falsely imprisoned her son, and then raped, sodomized, and murdered the boy.

Edenfield was a convicted child sex offender, and Keith contends that a number of complaints had been made to O'Quinn or her agents about Edenfield. Specifically, shortly before Christopher Barrios was kidnapped, parents of two teenage boys complained to O'Quinn that Edenfield had tried to kidnap the teens through trickery and deceit. Keith alleges that O'Quinn is liable to her for damages as landowner of the trailer park.

## DISCUSSION

Because Markel asserts that it is not obligated to defend or indemnify O'Quinn in the underlying case, the insurer maintains that it is logical to stay the underlying case, and Markel's defense obligations, until the declaratory judgment action is resolved.

[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.

*Landis v. N. Am. Co.*, 299 U.S. 248, 254–55, 57 S.Ct. 163, 81 L.Ed. 153 (1936).

 The Court should not exercise its power to stay proceedings lightly. *Home Ins. Co. v. Coastal Lumber Co.*, 575 F.Supp. 1081, 1083 (N.D.Ga.1983). When confronted with a motion to stay, the district court must consider its own interests in an orderly disposition of its caseload, and the parties' competing interests in the two actions. *Id.* "[T]he interest in judicial economy militates heavily in favor of either staying one of the actions or consolidating them." *Id.* (citing *Nelson v. Grooms*, 307 F.2d 76 (5th Cir.1962)).

Markel argues that the prejudice it faces in proceeding in the other case outweighs the prejudice to the other parties in staying the proceedings in that action. If a stay is not imposed, Markel will have to defend a lawsuit for which there may be no coverage. Keith's suit was filed in March 2008, and Markel did not delay in filing its motion to stay. Keith filed an amended complaint on June 4, 2008, and discovery has begun only recently.

 Both Keith and O'Quinn oppose Markel's motion to stay. O'Quinn has filed multiple briefs that reiterate Keith's arguments and adopt them as her own.[2] Keith

---

1. On June 4, 2008, Keith filed her amended complaint. There is no dispute that the amended complaint alleges liability based on kidnapping and false imprisonment allegations.

2. In future filings, the parties need not repeat the lengthy submissions of other parties, or

their own previous filings, verbatim to adopt those arguments as their own. It would be safer, and more expeditious, for the parties to simply recite that they adopt a previous filing, or the arguments made therein, either in whole or in specific part. Such a course promotes judicial economy, and avoids the

argues that she would be prejudiced by a stay. She has no contractual relationship with Markel, and Markel has no incentive to pursue its declaratory judgment action with any haste. Keith and O'Quinn argue that an indefinite delay is not in their interests, given that in the passage of time, memories could fade and witnesses could move from the trailer park and become difficult to locate.

Keith also argues that O'Quinn would be prejudiced by a stay because Markel has conflicting interests in the declaratory judgment action and in the underlying action. Discovery has begun in the underlying action, and O'Quinn should not be prevented the opportunity to discover exculpatory evidence, while Markel attempts to locate inculpatory evidence against her in an attempt to avoid coverage.

Markel rejoins that Keith's arguments of prejudice are speculative at best, and the insurer has stated that it is amenable to expedited discovery. Markel does nor deny that it has conflicting interests in the underlying case and the declaratory judgment action as to O'Quinn, but asserts that this is a good reason to stay the underlying case. That way, Markel will not be forced to defend O'Quinn while contesting coverage at the same time. This approach is endorsed by the Georgia Supreme Court as the fairest approach to the insured and insurer:

> Where an insurer denies coverage under a particular policy and seeks to relieve itself of its obligation to defend a pending suit against an insured because of circumstances pleaded which cast doubt on the coverage of the policy as applied to those circumstances, there is such immediacy of choice imposed upon it as to justify an adjudication by declaratory judgment.... A proper and safe

course of action for an insurer in this position is to enter upon a defense under a reservation of rights and then proceed to seek a declaratory judgment in its favor.

*Richmond v. Ga. Farm Bureau Mut. Ins. Co.*, 140 Ga.App. 215, 217, 231 S.E.2d 245 (1976) (internal citations omitted).

The parties in the instant case strongly dispute whether the insurance policy provides coverage in the underlying case, and whether the insurer has a duty to defend in the underlying action. It would be premature for the Court to decide these matters, and the Court reaches no conclusion either way. Nonetheless, the Court notes that the relevant policy provisions provide coverage for certain kinds of claims, namely, "bodily injury and property damage liability" and "personal and advertising injury liability," both of which are defined and limited under the policy. In addition, the policy contains exclusions that may be relevant in both this and the underlying case, specifically, the "assault and/or battery exclusion" and the "sexual abuse and/or molestation exclusion." The exclusions could limit insurance coverage of the allegations made by Keith against O'Quinn, or exclude coverage altogether.

Based on the policy language submitted to the Court, and the case law cited and discussed by the parties, it appears that the coverage question may depend on whether the false imprisonment and/or kidnapping allegations in Keith's complaint "arose out of" Edenfield's conduct against the victim that constituted "sexual abuse" or "assault and battery." According to Markel, the policy excludes coverage for Edenfield's acts of assault, battery, and sexual abuse, and the kidnapping and false arrest allegations "arose out of" this excluded conduct. While Keith and O'Quinn do not concede that these exclusions are

risk that either counsel or the Court will overlook some slight difference that may be lurk-

ing in the submission, which could be of consequence to the submitting party.

effective to any extent in the underlying action, they rest their arguments in this motion on whether some more limited portion of Keith's complaint gives rise to a duty to defend by the insurance company. However, whether the kidnapping and false imprisonment claims arose out of excluded claims under the policy is conjecture at this point by all parties concerned and, as mentioned above, the Court declines to opine on the matter in resolving the instant motion.[3]

O'Quinn alone also asserts that Markel would not be prejudiced by a stay because Markel has failed to assert a justiciable controversy, citing *Gunnells v. Cotton States Mut. Ins. Co.*, 117 Ga.App. 123, 124, 159 S.E.2d 730 (1968). To the contrary, the scenario presented herein represents the classic case for staying the underlying litigation to resolve an insurance coverage issue in a declaratory judgment action.

An insurer may not give an insured a unilateral notice of reservation of rights and thereupon proceed with a complete defense of the main claim absent insured's express or implied consent. This course of action may well result in prejudice to an insured. Upon learning of facts reasonably putting it on notice that there may be grounds for noncoverage and where the insured refuses to consent to a defense under a reservation of rights, the insurer must thereupon (a) give the insured proper unilateral notice of its reservation of rights, (b) take necessary steps to prevent the main case from going into default or to prevent the insured from being otherwise prejudiced, and (c) seek immediate declaratory relief including a stay of the main case pending final resolution of the declaratory judgment action.

We recommend the procedure followed by the insurance company in this case as being fair to both the insured and insurer and in conformance with our ruling herein.

*Richmond,* 140 Ga.App. at 219, 231 S.E.2d 245.[4]

 In sum, the Court concludes that a declaratory judgment action is an appro-

---

**3.** Keith and O'Quinn also argue that Markel's conduct may have either (a) waived its defense of noncoverage, or (b) amounted to a de facto denial of coverage. Keith and O'Quinn submit that this conduct weighs in favor of the Court denying Markel's motion for a stay. The Court disagrees.

Keith argues that Markel may have waived its defense of noncoverage because O'Quinn asserted in her answer to the declaratory judgment action that "Markel entered into a defense prior to sending or obtaining a reservation of rights and is thus estopped from claiming forfeiture or non-coverage and has waived any defenses to coverage which may have existed." Dkt. No. 9. However, neither Keith nor O'Quinn have made a sufficient showing of waiver to compel the Court to deny the motion to stay. Markel asserts that it did not assume the defense of O'Quinn prior to issuing the reservation of rights letter on April 4, 2008. Markel maintains that before that date, McHugh's conduct was done at O'Quinn's direction, and that the insurer had not retained him before that time. If what

Markel asserts is true, O'Quinn could be hard-pressed to establish waiver of Markel's defense of noncoverage.

With respect to the "de facto denial of coverage" argument, Markel has asserted that, unbeknownst to it, McHugh filed an answer to the original complaint on April 1, 2008, before its due date of April 7, 2008. Markel asserts that McHugh did so at O'Quinn's urging, not Markel's. Abel Decl. ¶ 9. Further, Markel asserts that it acted to protect O'Quinn's rights and did so in a timely fashion. Markel states that it retained counsel to file an answer on her behalf, and then discovered that an answer had already been filed. If what Markel asserts is true, these circumstances hardly show that Markel refused to defend O'Quinn. The Court will not refuse to enter an order staying the underlying litigation based on Defendants' undeveloped and factually unsupported theories.

**4.** Yet, the Court rejects Markel's unsupported assertion that the Court's decision on the mo-

priate mechanism to resolve this dispute. 28 U.S.C. § 2201; *State Farm Fire & Cas. v. Vaughn,* 803 F.Supp. 1446, 1448 (S.D.Ind.1992). To that end, a stay of the underlying litigation will aid in the early resolution of the insurer's coverage obligations, and such a course is appropriate under the circumstances presented here. *See N.H. Ins. Co. v. Shoney's, Inc.,* CV585–80, 1985 WL 5407 at *1–2 (S.D.Ga. Aug. 21, 1985).

## CONCLUSION

For the reasons explained above, Markel's motion to stay the underlying litigation, *Keith v. O'Quinn,* CV208–39 (S.D.Ga.), is **GRANTED.** Dkt. No. 8. The Clerk is **DIRECTED** to file this order in Civil–Action 208–39, as well as in the above-captioned case. All deadlines and filings in the underlying litigation are stayed pending a resolution of Markel's declaratory judgment action.

tion to stay is a substantive matter controlled by state law. Rather, the decision is committed to the sound discretion of the Court, as part of its inherent authority to manage its caseload. Such a matter is procedural, not substantive, and the Court's decision on the motion to stay is not controlled by state law pursuant to *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and its progeny.