SOUTHWIRE COMPANY, Plaintiff

v.

CERRO WIRE, INC., et al., Defendants.

Case No. 6:09–CV–289.

United States District Court, E.D. Texas, Tyler Division.

Nov. 10, 2010.

Jason Woodard Cook of Alston & Bird,
LLP, Dallas, TX, David S. Frist, Frank G.

Smith III, George D. Medlock, Jr., and Keith Edward Broyles of Alston & Bird, LLP, Atlanta, GA, for Plaintiff.

Monica L. Thompson, Albert E. Hartmann, Roger L. Longtin, and Steve J. Reynolds of DLA Piper, LLP, Chicago, IL, Brian K. Erikson and John M. Guaragna of DLA Piper, LLP, Aaron Gabriel Fountain and Michael Simons of Akin Gump Strauss Hauer & Feld, Richard D. Egan of O'Keefe, Egan & Peterman, LLP, Austin, TX. James Frank Cirincione of DLA Piper, LLP, Atlanta, GA, Sanford E. Warren, Jr., David Ray McAtee, Jonathan Hart Rastegar, Patrick Talman Farley, and Ronald Scott Rhoades of Akin Gump Strauss Hauer & Feld, Dallas, TX, Earl Glenn Thames, Jr. of Potter Minton, Tyler, TX, for Defendants.

## MEMORANDUM OPINION AND ORDER

LEONARD DAVIS, District Judge.

Defendants Cerro Wire Inc. and Encore Wire Corporation's joint supplemental motion to stay pending the reexamination of United States Patent No. 7,557,301 ("'301") by the United States Patent and Trademark Office ("PTO") (Docket No. 94) is before the Court. Having considered the parties' written submissions and oral arguments, the Court **GRANTS** Defendants' motion.

## BACKGROUND

In this suit, Southwire contends Cerro Wire and Encore Wire infringe the '301 patent. The '301 patent is a continuation of United States Patent No. 7,411,129 patent ("'129"), also assigned to Southwire. Southwire previously asserted the '129 patent against Cerro Wire, and Cerro Wire requested an *inter partes* reexamination for the '129 patent. After Southwire filed this case, Cerro Wire and Encore Wire each requested an *ex parte* reexamination of the '301 patent.

Defendants previously filed a motion to stay pending the '301 patent's reexamination (Docket No. 39), which the Court denied without prejudice (Docket No. 137). Defendants contend that events occurring since their earlier motion in the '301 and '129 patents' reexaminations warrant a stay. Specifically, in response to the PTO's initial rejection of all the '301 patent's claims, Southwire amended all of the independent claims and added three new claims. In the '129 patent's reexamination, the PTO again rejected of all claims of the '129 patent and declined to enter Southwire's proposed amendments, and Southwire has filed a notice of appeal and request for reconsideration. *See* March 30, 2010 Right of Appeal Notice (Docket No. 80); April 29, 2010 Request for Reconsideration of Refusal of Entry of Amendment; April 29, 2010 Petitions Requesting Entry of Amendment and Continued Reexamination Under 37 C.F.R. § 1.181 & 1.182; April 29, 2010 Notice of Appeal; April 30, 2010 Amended Notice of Appeal.

Southwire argues that a stay would only prejudice Southwire by allowing Defendants, Southwire's direct competitors, to continue their alleged infringement during the indeterminate length of the stay. Southwire claims the alleged infringement reduced its gross profit margin, compromised the public's perception of Southwire's products, encouraged third parties to enter the market and also infringe on Southwire's patent rights, and caused the loss of significant contracts. Southwire also contends that the stay would neither simplify the issues nor promote efficiency in resolving the matter—reasoning that the reexaminations and proposed amendments to the '301 patent's claims are non-final and the preliminary submissions do not accurately predict the final outcome of

the reexamination. Southwire argues that although the '301 patent's reexamination is proceeding with "special dispatch," 35 U.S.C. § 305, the reexamination and appeal could take years and a stay would irreparably harm Southwire's business.

## APPLICABLE LAW

The district court has the inherent power to control its own docket, including the power to stay proceedings. *See Soverain Software LLC v. Amazon.com, Inc.*, 356 F.Supp.2d 660, 662 (E.D.Tex. 2005) (Davis, J.); *see Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936); *Gould v. Control Laser Corp.*, 705 F.2d 1340,1341 (Fed.Cir.1983). How to best manage the court's docket "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id.* In deciding whether to stay litigation pending reexamination, courts typically consider: (1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party, (2) whether a stay will simplify the issues in question and trial of the case, and (3) whether discovery is complete and whether a trial date has been set. *Soverain Software LLC*, 356 F.Supp.2d at 662; *Xerox Corp. v. 3Com Corp.*, 69 F.Supp.2d 404, 406 (W.D.N.Y. 1999).

## ANALYSIS

Southwire's claim amendments and responses during the '301 patent's reexamination strongly weigh in favor of staying this litigation. On May 4, 2010, the PTO issued an Initial Office Action rejecting all of the '301 patent's claims in Cerro Wire's *ex parte* reexamination. In response, Southwire did not attempt to distinguish the prior art over the original claims; instead, it amended all of the independent claims and added three new claims. The following amendments to claim 1 illustrate the extent of Southwire's changes:

1. In a method of manufacturing a finished *self-lubricating* electrical cable having a conductor core and a jacket formed primarily of a first material, the jacket surrounding at least said conductor core and *the outermost exterior surface of the jacket* defining the outermost exterior surface of the finished cable, the improvement comprising combining *with said first material an amount of* a [preselected] lubricant, *the lubricant having been selected from different lubricants for the purpose of pairing with the first material to reduce the amount of force required to install the cable,* said selected lubricant being combined with said first material *for the purpose of, but* prior to the *completing of,* the formation of said jacket, *said selected lubricant being of the type that migrates, over time, through said completely formed jacket to be available to lubricate the outermost exterior surface of the jacket at the time the cable is to be installed* to provide a reduced coefficient of friction of said outermost exterior surface *of said jacket, the said amount of the selected lubricant sufficient to provide such a considerable reduction of the coefficient of friction of said exterior surface of the cable at the time of the cable's installation to quantifiably* [and also] reduce the amount of force required to [pull] *install* the cable. [during its installation, in which said lubricant is of the type which migrates through said jacket to be available at said outermost exterior surface of said finished cable during the cable's installation.]

May 4, 2010 Corrected Response to Initial Office Action at 1 (deletions bracketed and additions underlined). Several of the proposed amended claim terms are entirely new and are intertwined with the terms

the parties currently request the Court construe. Given Southwire's decision to amend its claims in response to the PTO's Initial Office Action, the '301 patent's reexamination will result in amended claims with different scope and limitations than the claims currently at issue. During oral argument, Southwire acknowledged that the proposed revisions would require this Court to follow-up with additional claim construction, tacitly acknowledging the effect and significance of its proposed amendments. Thus, Southwire's substantive claim amendments during reexamination strongly favor staying this litigation.

■ Additionally, Southwire's inconsistent statements to the PTO favor a stay. In pursuing its patent claims in this Court, Southwire contends the '301 patent claims are valid. However, Southwire stated to the PTO that the revised claims, "*particularly as amended,* are not anticipated or rendered obvious by the cited prior art." *Id.* at 9 (emphasis added). Southwire chose to preliminarily amend its claims, and it is upon those particular amendments that it now asserts the '301 patent is valid over the prior art. Accordingly, it would waste the Court's time and resources to construe the original '301 patent's claims. A stay would simplify and resolve any inconsistencies between Southwire's representations to the Court and the PTO regarding the scope and validity of the '301 patent. Southwire's inconsistent positions regarding validity and its amendments changing the '301 patent's scope before the Court has conducted a *Markman* hearing strongly favor staying this case.

■ The similarities between the '129 and the '301 patents slightly favor staying this case. Defendants contend the status of the '129 parent patent has a significant bearing on the '301 patent, arguing that the similarities between the patents indicate that the '301 patent, as originally drafted, will also be rejected by the PTO during reexamination. Although there is a notable correlation between the patents' claims,[1] this does not guarantee the '301 patent will suffer the same fate as its parent. Thus, these similarities only slightly favor staying this litigation.

In light of these specific facts, a stay will simplify the issues in question and at trial. Staying this litigation will allow time to resolve any inconsistencies between Southwire's representations to the Court and the PTO regarding the '301 patent's scope and validity.

■ Generally, the prejudice of staying Southwire's claims against its direct competitors weighs heavily against a stay; however, Southwire's decision to submit substantive claim amendments during the '301 patent's reexamination neutralizes this prejudice. Southwire is not prejudiced by a stay of patent claims that it is attempting to change. Therefore, a stay would not unduly prejudice or present a clear tactical disadvantage to Southwire.

■ Finally, the timing of Southwire's actions also favors a stay. Southwire's claim amendments and its inconsistent statements regarding validity occurred before the Court invested its resources in construing the claims. These proposed amendments significantly alter the origi-

---

1. The Examiner, who was also the '129 patent's Examiner, also noted the overlapping similarities in the claim language in rejecting the '301 claims for nonstatutory obviousness-type double patenting. Aug. 7, 2008 Office Action for U.S. Appl. No. 12/017,222 at 5 ("[a]lthough the conflicting claims are not identical, they are not patentably distinct from each other because all of the claimed subject matter of the claimed invention is disclosed in claims 1–8 of U.S. Patent Number 7,411,129"). In response, Southwire filed a Terminal Disclaimer to obviate the double patenting rejection.

nally issued claims that are currently pending before the Court. Although the Court places great importance on going to trial on the date set in the scheduling order, it is still early enough in this litigation to warrant a stay—the *Markman* hearing has not occurred, expert reports have not been exchanged, discovery is not completed, summary judgment motions have not been filed, and the Court has not begun its claim construction. Therefore, the timing of the Southwire's actions during the course of this litigation weighs in favor of a stay.

Reexamination is not necessarily such an extraordinary circumstance that justifies a stay, and the Court previously denied a stay in this case. However, the specific facts here tip the scales in favor of a stay: Southwire substantively amended the independent claims of the patent-in-suit to avoid the prior art cited in the reexamination, Southwire has made inconsistent representations regarding the validity of the asserted claims, the Court has not yet construed the claims, and the PTO's rejection of the parent patent has proceeded to the appeal stage of the reexamination proceedings. Standing alone, these factors do not merit a stay pending reexamination; but in combination they do.

## CONCLUSION

After considering the prejudice to Southwire, the possibility of issue simplification, and the effective use of resources, the Court **GRANTS** Defendants' motion (Docket No. 94). The Court **STAYS** this case for six months, and the parties shall file a Joint Status Report by May 1, 2011. If a further stay is needed, the Court will consider a motion for extension in due course.