IN THE UNITED STATES DISTRICT COURT 
 FOR THE MIDDLE DISTRICT OF ALABAMA 
 EASTERN DIVISION 

FRED NEKOUEE, ) 
 ) 
 Plaintiff, ) 
 ) 
v. ) CASE NO.: 3:19-cv-866-ECM 
 ) (WO) 
OPELL HOLDINGS, LLC, ) 
 ) 
 Defendants. ) 

 ORDER 
 This matter is before the Court on Defendant’s Motion for a Stay in Proceedings 
(doc. 15), filed on December 30, 2019. The Plaintiff filed a Response (doc. 22), on January 
16, 2020, and a supplement to the Response (doc. 24), on January 17, 2020. The Defendant 
filed a Reply (doc. 26), on January 23, 2020. For the reasons set forth below, the 
Defendant’s Motion is due to be GRANTED. 
I. JURISDICTION AND VENUE 
 The jurisdiction of this Court is properly invoked pursuant to 28 U.S.C. § 1331. 
Venue is proper pursuant to 28 U.S.C. § 1391 (b)(1) and (2). 
II. LEGAL STANDARDS 
 1. The Americans with Disabilities Act 
 Title III of the Americans with Disabilities Act (“ADA”) prohibits discrimination 
on the basis of disability in public accommodations and “gives specific guidance to that 
end.” Gomez v. Dade Cnty. Fed. Credit Union, 2015 WL 2082213 at *1 (11th Cir. 2015). 
Any person who owns, leases, or operates a “place of public accommodation” is subject to 
the ADA’s “clear, strong, consistent, enforceable standards.” Id. quoting 42 U.S.C. § 
12101(a)(7); see also 42 U.S.C. § 12181(7)(B) (defining a public accommodation as a 
“restaurant, bar, or other establishment serving food or drink”). As to public facilities, 
Title III defines “discrimination” as, inter alia, “a failure to remove architectural barriers . 

. . in existing facilities . . . where such removal is readily achievable.” 42 U.S.C. § 
12182(b)(2)(A)(iv). “[A]ny person who is being subjected to discrimination on the basis 
of disability in violation of [Title III]” may bring a private action. Id. § 12188(a). The 
availability of attorney fee awards to prevailing parties has incentivized private actions—
even though the relief available to private ADA plaintiffs is otherwise limited to injunctive 

relief and costs. 
 2. Stay of Proceedings 
 “[T]he power to stay proceedings is incidental to the power inherent in every court 
to control the disposition of the causes on its docket with economy of time and effort for 
itself, for counsel, and for litigants.” Landis v. N. Am. Co., 299 U.S. 248, 254–55 (1936); 

see also Wedgeworth v. Fibreboard Corp., 706 F.2d 541, 544–45 (11th Cir.1983) (noting 
district courts possess “general discretionary power” to stay proceedings “in the interests 
of justice and in control of their dockets”). In deciding whether to stay an action, the court 
“must weigh competing interests and maintain an even balance.” Landis, 299 U.S. at 254–
55. The party requesting the stay “must make out a clear case of hardship or inequity in 
being required to go forward, if there is even a fair possibility that the stay for which he 

prays will work damage to someone else.” Id. at 255. Courts should not, however, enter 
an indefinite or immoderate stay absent “a pressing need.” Id. 
III. DISCUSSION 
 1. Facts and Procedural History 
 Plaintiff Fred Nekouee filed suit against Defendant Opell Holdings, LLC (“Opell”) 
on November 8, 2019, alleging that a Huddle House restaurant operating on Opell’s 

property in Opelika, Alabama, is inaccessible to the Plaintiff and other persons with 
disabilities due to numerous violations of the ADA. The Plaintiff has progressive multiple 
sclerosis and requires the use of a wheelchair for mobility. The Plaintiff contends that he 
encountered barriers at the Huddle House restaurant including improper slope of the 
designated disabled parking spaces, excessive counter heights throughout the restaurant, 

and restrooms that fail to comply with necessary ADA regulations. The Plaintiff claims 
that Opell’s violations prevent the Plaintiff from availing himself of the goods and services 
offered at the Huddle House located on Opell’s property. 
 In response, Opell filed its Motion for an eight-month stay of this action, informing 
the Court that, prior to the instant suit being filed, Opell entered into a confidential 

settlement agreement with a third party (“the claimant”) concerning the subject property 
and had already begun remediation efforts. Opell filed the following evidence in support 
of its Motion: 
 1. a letter sent to Opell by the claimant’s attorney (doc. 15-2); 
 2. a redacted copy of the confidential settlement agreement (doc. 15-2); and 
 3. an affidavit from Alex Rainey, the Managing Member of Opell, confirming that, 

prior to being served with the Plaintiff’s Complaint, Opell had obtained estimates, 
consulted with engineers, and was in the process of seeking funding for larger modification 
projects (doc. 15-1). Rainey estimates that remediation will be complete within eight 
months. 
 2. The Parties’ Arguments 
 In its Motion and Reply to the Plaintiff’s Response, Opell notes that the ADA 

violations alleged in the Plaintiff’s Complaint are the same as those raised by the claimant. 
Opell argues that, with remediation efforts already underway, requiring Opell to litigate 
this case would waste judicial resources, “enrich the Plaintiff’s counsel through recovery 
of unnecessary attorney’s fees and expert costs,” and undermine the very spirit of the ADA. 
(Doc. 16). Opell contends that the settlement agreement requires Opell to bring the 

property to full ADA compliance and that it has already completed certain efforts, such as 
converting the former men’s restroom into a unisex ADA-compliant restroom. (Doc. 26). 
 The Plaintiff, on the other hand, argues that the settlement agreement does nothing 
to advance the goals of the ADA, but is instead “a fraud to get the claimant’s lawyer paid, 
while not requiring the Defendant to actually make any repairs to bring its property in 

compliance with the ADA.” (Doc. 22). The Plaintiff asserts that “the ‘claimant’ appears 
solely concerned with how much money he will get for his attorney’s fees and costs” while 
lamenting that if a stay is granted, “the Plaintiff herein will be stuck with thousands of 
dollars in attorney’s fees and costs attributable to the filing of the lawsuit herein, which he 
should rightfully recover from the Defendant.” Id. The Plaintiff urges that this settlement 
agreement should not be the basis for a stay of this case and cautions that courts should not 

stay ADA enforcement actions to allow defendants to remediate their properties and avoid 
paying attorney’s fees. The Plaintiff, fearing that a stay of this case will ultimately moot 
his claims and leave him “stuck” with his fees and costs, suggests a solution. The Plaintiff 
proposes that “the Defendant should simply concede these matters, and either settle the 
case in its entirety, or at least settle the matter of the ADA violations while reserving on 
and allowing the Court to adjudicate the matter of the Plaintiff’s attorney’s fees and costs.” 

Id. 
 The Defendant replies that “Plaintiff’s response to the Motion to Stay brings home 
the point that this action is one that is driven by the economics of attorney’s fees.” (Doc. 
26). The Court agrees. 
 3. Analysis 

 In determining whether to enter a stay in this action, the Court must weigh the 
competing interests of the parties. Landis, 299 U.S. at 254–55. Here, Opell has not only 
entered into a binding agreement to make ADA-compliant modifications to its property, 
but had already commenced efforts to fulfill this obligation before the instant suit was filed. 
Having reviewed the confidential settlement agreement, the Court finds the agreement is 

sufficient to justify a stay of these proceedings. The agreement and supporting affidavit of 
Alex Rainey evidence Opell’s commitment to remedy any ADA violations at its property 
and to provide photographs of the modifications once completed. 
 The possibility that the Plaintiff might be “stuck” with attorney’s fees and expert 
costs in this action does not outweigh the interests of avoiding needless expenditures and 
conserving judicial resources. Because Opell has already completed certain repairs and is 

working to secure funding for larger remediation projects, the Court finds that it is in both 
the Plaintiff’s and the public’s interest to allow Opell to continue its efforts without the 
hinderance of unnecessary litigation. Indeed, the Plaintiff was put on notice that Opell was 
making remediation efforts when his attorney was contacted by defense counsel after the 
lawsuit was filed. Instead of reevaluating his position in light of this information, the 
Plaintiff took an unnecessarily adversarial position, accusing Opell of paying “hush 

money” to the claimant’s lawyer, characterizing the settlement agreement as a “fraud,” and 
demanding that he recover from the Defendant because “ADA enforcement is predicated 
upon payment of these attorney’s fees and costs.” (Doc. 22). While instituting legal action 
may be necessary in order to compel ADA compliance, such lawsuits are not merely 
vehicles by which attorneys trigger an immediate entitlement to fees and costs. Plaintiff’s 

arguments in opposition to the stay are wholly unpersuasive. 
 The Court is cognizant that it should not enter indefinite or immoderate stays absent 
a pressing need by the moving party. Id. at 255. A stay of the instant case is neither 
indefinite nor immoderate. Revisiting this issue in eight months’ time will not “work 
damage” to the Plaintiff. Id. Rather, this time period allows Opell to remediate its property 

to achieve accessibility by the Plaintiff and others with disabilities, fulfilling the laudable 
goals of the ADA and giving the Plaintiff a portion of the relief requested in his Complaint. 
IV. CONCLUSION 
 The Court finds it is in the interests of justice to grant a stay of this action to allow 
Opell to complete remediation efforts to bring its property to full ADA compliance. 
Accordingly, it is ORDERED as follows: 
 1. Defendant Opell’s Motion for a Stay in Proceedings (doc. 15), is GRANTED; 

 2. This action is STAYED pending further order of the Court; 
3. On or before October 19, 2020, Opell shall submit to the Plaintiff photographic 
evidence of ADA-compliant modifications made to the Huddle House restaurant 
and surrounding property located at 2020 Gateway Drive, Opelika, Alabama, 
36801; and 

4. On or before October 26, 2020, each party shall file a position statement 
regarding whether the stay should be lifted; and if so, how lifting the stay affects 
the manner in which this case shall proceed. If a party contends the stay should 
not be lifted, the party’s position statement should include reasons for continuing 
the stay and a proposed date on which the stay could be lifted. 

DONE this 19th day of February, 2020. 

 /s/ Emily C. Marks 
 EMILY C. MARKS 
 CHIEF UNITED STATES DISTRICT JUDGE