

## Fourth Court of Appeals
### San Antonio, Texas

**MEMORANDUM OPINION**

No. 04-22-00446-CV

**IN THE INTEREST OF T.L.C.,** a Child

From the 25th Judicial District Court, Guadalupe County, Texas
Trial Court No. 20-0569-CV-A
Honorable Heather H. Wright, Judge Presiding

Opinion by:     Luz Elena D. Chapa, Justice

Sitting:          Patricia O. Alvarez, Justice
                  Luz Elena D. Chapa, Justice
                  Irene Rios, Justice

Delivered and Filed: April 10, 2024

AFFIRMED

Appellant David Leo Cormier aka Fa'ro Alier (Alier) seeks to set aside a final order entered on May 25, 2022 in a suit affecting the parent-child relationship related to his daughter, T.L.C. On appeal, he argues the trial court made biased statements against him, engaged in conspiracy, violated his fundamental and constitutional rights, and erred by designating T.L.C.'s mother as sole managing conservator. We affirm the trial court's final order.

### BACKGROUND

On March 11, 2020, the Office of the Attorney General ("OAG") filed a Petition to Establish Parent-Child Relationship to establish Alier's paternity of T.L.C. and compel him to pay child support. At the time of the filing, T.L.C. was five years old. After a hearing, an associate judge issued a temporary order, establishing a parent-child relationship between Alier and T.L.C.

and appointing T.L.C.'s mother sole managing conservator and Alier possessory conservator. The order also required Alier to pay $216.00 per month in child support and $57.00 per month in cash medical support to T.L.C.'s mother. It further found it was in T.L.C.'s best interest for Alier to have supervised visits with her on the first weekend of every month.

A final hearing before the associate judge occurred on November 23, 2021, and both parties appeared. The trial court ultimately entered a final order similar in all respects to the temporary order, except it increased Alier's child support obligation to $407.00. Alier then requested a de novo hearing pursuant to section 201.015 of the Texas Family Code, objecting to T.L.C.'s mother's appointment as sole managing conservator, his child support obligation, and the possession and access schedule. At the de novo hearing, both parties appeared, and Alier argued for equal possession of T.L.C. Following the hearing, the trial court entered a final order on May 25, 2022, adopting the previous order but altering the possession and access schedule. Specifically, it found it was in T.L.C.'s best interest for Alier to have supervised visits with T.L.C. on the first weekend of every month, and upon the completion of twenty-four in-person visits, he would then have visitation in accordance with the standard possession and access schedule further detailed in the order.

Alier now appeals, arguing the trial court was biased against him, engaged in conspiracy, violated his fundamental and constitutional rights, and erred by designating T.L.C.'s mother as sole managing conservator.

## JUDICIAL BIAS

Alier first raises the issue of judicial bias, arguing the trial judge presiding over the de novo hearing was biased against him, and the judge's impartiality should have disqualified her from presiding over the hearing. He argues the trial judge's "behavior and attitude" was "always harsh

and biased," and because the trial judge favored opposing counsel, she "always violated my fundamental rights."

The federal and state constitutions guarantee a defendant the right to an impartial judge. *See Abdygapparova v. State*, 243 S.W.3d 191, 208 (Tex. App.—San Antonio 2007, pet. ref'd) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973) and *Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006)). When a claim of judicial bias is raised, we review the record to determine whether it shows the judge's bias or prejudice denied the defendant due process. *Abdygapparova*, 243 S.W.3d at 198. The United States Supreme Court has stated, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 240 (Tex. 2001) (per curiam) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)) (internal quotation marks omitted). Moreover, the Texas Supreme Court has adopted the same philosophy, providing:

> opinions the judge forms during a trial do not necessitate recusal unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.

*Id.* (quoting *Liteky*, 510 U.S. at 555) (internal quotations omitted). "[E]xpressions of impatience, dissatisfaction, annoyance, and even anger" do not establish bias or partiality, and "a trial court has the inherent power to control the disposition of cases with economy of time and effort for itself, for counsel, and for litigants." *Id.* (quoting *Liteky*, 510 U.S. at 555 and *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936)) (internal quotation marks omitted).

Our review of the record shows the trial judge conducted the de novo hearing with professionalism. Alier, however, points to two instances in which he contends the trial judge acted with bias against him. The first instance he points to is when the trial judge asked Alier to stop talking after Alier repeatedly interrupted opposing counsel's questioning. The trial judge said,

"Stop talking. You need to let him finish his question before you start an answer. My court reporter has to make an entire record of the hearing, and she can't do it if you keep talking over him. You will get your turn to speak. Let him finish his question." We conclude the trial judge's action did not constitute bias, but instead it was part of the trial court's inherent power to maintain control in the courtroom. *See id.* at 241 ("Further, a trial court may properly intervene to maintain control in the courtroom, to expedite the trial, and to prevent what it considers to be a waste of time.").

Alier next contends the trial judge insulted him when she told him to "knock it off." The record shows Alier claimed the associate judge "didn't have any morals" at which point the trial judge told Alier, "Stop. I'll tolerate a lot of things in my courtroom. What I won't tolerate is you making accusations about the morality of a fellow colleague of mine, so you need to knock it off." Again, we conclude the trial judge's comment does not establish bias or partiality as it was part of the trial court's inherent power to maintain civility in the courtroom. *See id*. at 240–41 (pointing out critical or disapproving comments made to the parties do not support bias or partiality). Accordingly, we overrule Alier's first issue complaining of judicial bias.

### CONSPIRACY AND VIOLATION OF FUNDAMENTAL AND CONSTITUTIONAL RIGHTS

In his next two arguments, Alier asserts the trial court engaged in conspiracy when the trial judge stated she refused to rule against her colleague, and the trial court violated his fundamental and constitutional rights by not entering his name on T.L.C.'s birth certificate. Other than these general accusations, Alier has not presented us with any substantive analysis to support them. Instead, he makes brief conclusory statements without citing legal authority. Accordingly, we

overrule these issues because they are inadequately briefed and therefore waived.[1]  *See* TEX. R. APP. P. 38.1(i).

## MANAGING CONSERVATORSHIP

Finally, Alier asserts the trial court erred by appointing T.L.C.'s mother as sole managing conservator of T.L.C.  According to Alier, T.L.C.'s mother was a "habitual drug user," "woman of bad character," and did not have the financial resources necessary to care for T.L.C.  Thus, her appointment as sole managing conservator was not in T.L.C.'s best interest.

In general, we review a trial court's conservatorship decision for an abuse of discretion.  *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007) (citing *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982)).  Conservatorship determinations are "intensely fact driven," *Lenz v. Lenz*, 79 S.W.3d 10, 19 (Tex. 2002), and a trial court is afforded broad discretion regarding conservatorship matters.  *See In re V.R.G.*, No. 04-17-00583-CV, 2018 WL 842766, at *1 (Tex. App.—San Antonio Feb. 14, 2018, no pet.) (mem. op.); *In re E.B.*, No. 04-13-00039-CV, 2014 WL 2547598, at *4 (Tex. App.—San Antonio June 4, 2014, no pet.) (mem. op.).  We will reverse a trial court's conservatorship ruling only when the trial court's decision is arbitrary and unreasonable.  *J.A.J*, 243 S.W.3d at 616.

The primary consideration in determining conservatorship and possession of and access to the child is the best interest of the child.  TEX. FAM. CODE § 153.002.  Unless a trial court finds it would significantly impair the child's physical health or emotional development, "a parent shall be appointed sole managing conservator or both parents shall be appointed as joint managing

---

[1] Even if Alier had adequately raised these issues for our consideration, his arguments are unavailing because there is no evidence the trial judge engaged in conspiracy.  The only reference the trial judge made regarding her colleague occurred when the trial judge told Alier she would not tolerate him "making him accusations about the morality of a fellow colleague," which we previously held did not establish judicial bias.  Additionally, at no point during the de novo hearing did Alier request the trial court enter his name on T.L.C.'s birth certificate.

conservators of the child." *Id*. § 153.131(a). The law presumes appointing both parents as joint managing conservators is in the best interest of the child. *Id*. § 153.131(b). But, this presumption ceases when the trial court makes a finding of a history of family violence. *Id*. When, as here, no findings of fact and conclusions of law were requested or filed, it is implied that the trial court made all findings necessary to support its judgment. *In re K.L.S.*, No. 11-21-00094-CV, 2022 WL 401474, at *2 (Tex. App.—Eastland Feb. 10, 2022, no pet.) (mem. op.) (citing *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam)). Finally, in determining the best interest of the child, a trial court considers the factors outlined in *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).[2]

At the de novo hearing, the trial court indicated it had reviewed the record from the previous hearing held before the associate judge that took place on November 23, 2021. *See* TEX. FAM. CODE § 201.015(c) (providing referring court may consider record from hearing before associate judge); *In re A.L.M.-F.*, 593 S.W.3d 271, 276 (Tex. 2019); *In re R.S.–T.*, 522 S.W.3d 92, 108 (Tex. App.—San Antonio 2017, no pet.) (quoting § 201.015(c)) (internal quotation marks omitted). The trial court also heard testimony from Alier, who testified the appointment of T.L.C.'s mother as managing conservator was not in T.L.C.'s best interest because T.L.C.'s mother was an alcoholic, drug addict, and "always fighting." When asked whether he had witnessed any illegal drug use, Alier testified he had not, but he believed she continued using illegal drugs because people who do drugs "don't just stop." Alier was also asked whether he had a relationship with T.L.C., and Alier testified the longest amount of time he had cared for T.L.C. was the first

---

[2] These factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the parents to promote the best interest of the child; (6) the plans for the child by the parent seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id*.

six months of her life. Alier testified T.L.C.'s mother took T.L.C. away from him after six months because his name was not on T.L.C.'s birth certificate. He further testified he had been unable to establish a relationship with T.L.C. because anytime he tried, T.L.C.'s mother would lie to him or one of her boyfriends would threaten him. Alier testified when he came to see T.L.C. this past summer, T.L.C.'s boyfriend threatened him with a knife. Alier also testified he had been living in Oakland, California for the past three years, and he wanted to move T.L.C. to California to live with him. He testified he currently lived in a two-bedroom house and did not have a job, but he planned to get state assistance to help him support T.L.C.

The trial court also heard testimony from T.L.C.'s mother, who testified T.L.C. had never lived with Alier for six months. She stated T.L.C. lived with him for two weeks after she was born, and when he brought T.L.C. to the hospital for a "PKU" screening, he left T.L.C. with her after he found out T.L.C. did not share his last name. T.L.C.'s mother further testified Alier was violent and had slapped her four-year old son during a visit after he believed her son had scratched T.L.C.'s face. She further described Alier's temper as going from "zero to a hundred" at "any little thing," and she was scared to tell him where she and T.L.C. currently lived. She also added T.L.C. was not comfortable being alone with Alier, but she believed it was important for him to have a bond with T.L.C. and agreed monthly supervised visitations would help establish a bond.

T.L.C.'s mother also testified she had seven other children. When asked whether she had a past history with Child Protective Services, she stated she had, but added her children had never been removed from her care, and she had never been arrested. She further denied using illegal drugs. Finally, when asked how she supported herself and T.L.C., she testified she received SSI income and her husband was employed. She added she lived in a three-bedroom house, and T.L.C. had health insurance through Medicaid.

Based on this evidence, the trial court could have implicitly found Alier engaged in a history of family violence, rebutting the presumption in favor of both parents being appointed joint managing conservators of T.L.C. *See K.L.S.*, 2022 WL 401474 at *5. The trial court could have further determined appointing T.L.C.'s mother as managing conservator was in T.L.C.'s best interest after considering T.L.C.'s age and relationship with Alier. *See Holley*, 544 S.W.2d at 371–72. The trial court could have also chosen not to believe Alier's testimony, characterizing T.L.C.'s mother as an alcoholic, drug addict, and violent person, and instead, it could have chosen to believe T.L.C.'s testimony stating she did not use drugs, and she supported T.L.C. *See In re R.D.Y.*, 51 S.W.3d 314, 321 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (op. on reh'g) (explaining trial court is in the best position to observe credibility and personalities of witnesses regarding terms of conservatorship). Accordingly, we cannot conclude the trial court abused its discretion by appointing T.L.C.'s mother sole managing conservator of T.L.C., and we overrule Alier's final complaint.

## CONCLUSION

Having overruled Alier's complaints, we affirm the trial court's de novo order entered on May 25, 2022.

Luz Elena D. Chapa, Justice